# EXHIBIT A

Filed Date _____ 1-16-18 _____
Batch No. _____ 840 _____
Receipt No. _____ 121 (OK) _____
Amount _____ $206.00 _____

# Original

Gregory J. Skiff
Y8 Farmhouse Lane
Morristown, New Jersey 07960
(Tel) 201.787.8701
skiffg@outlook.com

*Pro se Plaintiff*

| | |
|---|---|
| GREGORY J. SKIFF, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION: SPECIAL CIVIL PART MORRIS COUNTY |
| *Plaintiff,* | Civil Action |
| v. | Docket No. |
| BMW FINANCIAL SERVICES NA, LLC, CENTRAL CREDIT SERVICES LLC and GEICO GENERAL INSURANCE COMPANY, | **COMPLAINT** |
| *Defendants.* | |

  *Pro se* plaintiff Gregory J. Skiff ("**Skiff**") as and for his complaint against defendants

BMW Financial Services NA, LLC ("**BMW**"), Central Credit Services LLC ("**CCS**") and

GEICO General Insurance Company ("**GEICO**," together with BMW and CCS, the

"**Defendants**"), alleges as follows:

## THE PARTIES

  1.  Skiff is an individual and resident of the State of New Jersey with an address at

Y8 Farmhouse Lane, Morristown, New Jersey.

  2.  BMW is a limited liability company duly formed in the State of New Jersey,

having a place of business at ~~300 Chestnut Ridge Road, Woodcliff Lake, New Jersey.~~

    5550 Britton Parkway, Hilliard, OH 43026.

3.     CCS is a foreign limited liability company formed in the State of Florida, having

a place of business at 9550 Regency Square Boulevard, Suite 500A, Jacksonville, Florida.

4.     GEICO is foreign for-profit insurance ~~~~~~ ~ ' orized to conduct business

and issue auto insuranc                                a place of business at 300

Crosspoint Parkway, G

**A.  The Lease Agr**

5.     On April                                ten BMW Financial

Services Motor Vehicle                          y (the "**Lease**") in

connection with Skiff's                         number

WBA3B9G52FNR9342( ~~~ ~~~ ). A true and correct copy of the Lease is annexed

hereto as **Exhibit A**.

6.     Pursuant to Sections 6 and 25 of the Lease, entitled "Monthly Payments" and

"Payments, Late Charge, Returned Payment Charge, Fines, and Traffic Tickets", respectively,

Skiff's monthly payment of $594.00 (the "**Monthly Payment**") was due within ten days of the

27th day of each month (the "**Grace Period**").  (Ex. A §§ 6 and 25.)

7.     Pursuant to Section 23 of the Lease, entitled "Required Insurance," Skiff

purchased an auto insurance policy with GEICO bearing the Policy Number 4274190570 (the

"**Policy**"), which, at all relevant times herein, Skiff maintained in compliance with the specific

requirements set forth in Section 23 of the Lease. (*See* Ex. A § 23.)

8.     Section 27 of the Lease, entitled "Vehicle Loss or Damage", provides in pertinent

part that in the event the Vehicle is destroyed in an accident and Skiff is in compliance with his

2

insurance obligations, Skiff's liability will be "calculated under Section 28" of the Lease.  (Ex. A § 27.)

9.      Section 28 of the Lease, entitled "'Gap Amount' Waiver", provides in pertinent part that if "the Vehicle is damaged, stolen or destroyed and considered a total loss under [Skiff's] insurance coverage, [Skiff] will not be obligated to pay [Defendant] the gap amount (the difference between the Adjusted Lease Balance and the actual cash value of the Vehicle as of the date of loss)," but that "[Skiff] will be obligated to pay [Defendant]:  (1) any and all amounts due and owing needed to satisfy [Skiff's] obligations under th[e] Lease (including past due Monthly Payments and any official fees and taxes assessed or billed in connection with th[e] Lease and the Vehicle); plus (2) any amounts (including Monthly Payments) that become due pending receipt of the insurance proceeds, plus (3) the deductible amount under [Skiff's] insurance policy, plus (4) any amounts deducted from the actual cash value of the Vehicle by the insurance carrier," (the "**Gap Waiver**").  (Ex. A § 28.)

10.     Skiff's liability under Section 28 of the Lease does not include amounts calculated under Section 11 of the Lease, entitled "Excessive Wear and Use".  (*See* Ex. A § 28.)

**B.  The Lease Termination**

11.     On June 27, 2017, Skiff made the applicable Monthly Payment within the Grace Period.

12.     On July 7, 2017, the Vehicle was rendered disabled due to a flash flood with Skiff and his five-month old infant daughter stuck inside the Vehicle, which later needed to be towed to a local auto repair shop located in Parsippany, New Jersey.

13.     After much delay, on or about July 20, 2017, GEICO declared the Vehicle a total loss under the Policy and on August 5, 2017, GEICO remitted payment to BMW the total loss

payoff in the amount of $32,085.00 (the "**Payoff**"). A true and correct copy of GEICO's Payoff "Payment Details" is annexed hereto as **Exhibit B**.

14.     The Grace Period applicable to the July 2017 Monthly Payment expired on August 6, 2017. (*See* Ex. A §§ 6 and 25.)

15.     On August 11, BMW called Skiff on a recorded line and represented to him that GEICO had remitted the Payoff to BMW and that the balance on Skiff's account was "$0."

### C. Collection Efforts

16.     Contrary to BMW's August 11 representation, by letter dated August 14, 2017, BMW sought payment from Skiff of a purported balance due in the amount of $4,220.90 (the "**Alleged Debt**"). A true and correct copy of the August 14 letter is annexed hereto as **Exhibit C**.

17.     On at least four occasions in August and September 2017, BMW used an automatic telephone dialing system to contact Skiff's cellular phone regarding the Alleged Debt without his express prior consent.

18.     On the first occasion, Skiff instructed BMW that he was withholding his consent for BMW to contact him on his cellular phone using an automatic telephone dialing system or otherwise and that BMW should cease contacting him on his cellular phone.

19.     Despite Skiff's instructions, BMW continued to contact Skiff using an automatic telephone dialing system regarding the Alleged Debt.

20.     In its August 14 letter, BMW purported to quote applicable language from the Lease that it falsely stated supported its basis for seeking payment of the Alleged Debt. Upon further review of the Lease, the quoted language does not exist. (*See generally*, Exs. A and C.)

21.     By letter dated October 18, 2017, Skiff advised BMW that, among other things: (a) BMW had already represented to Skiff on August 11 that his account balance was "$0"; (b) the language BMW relied upon in its August 14 letter did not exist; and, (c) Skiff categorically disputed the amount of the Alleged Debt.  A true and correct copy of the October 18 letter is annexed hereto as **Exhibit D**.

22.     By letter dated November 2, 2017, BMW conclusorily rejected Skiff's contentions in his October 18 letter and maintained that the Alleged Debt was due.  A true and correct copy of the November 2 letter is annexed hereto as **Exhibit E**.

23.     In a final good-faith attempt to resolve the dispute, by letter dated November 8, 2017, Skiff maintained that the Alleged Debt was not due and offered to pay to BMW the amount of $700 in full satisfaction of the Alleged Debt in exchange for a release of all purported claims.  A true and correct copy of the November 8 letter is annexed hereto as **Exhibit F**.

24.     Upon information and belief, BMW rejected Skiff's offer of settlement and, instead, referred the matter to CCS for collection, misrepresenting to CCS that the Alleged Debt was due and owing under the applicable terms of the Lease.  A true and correct copy of CCS's letter dated December 18, 2017, advising Skiff that it was engaged by BMW to collect the Alleged Debt is annexed hereto as **Exhibit G**.

25.     On at least four occasions in December 2017 and January 2018, CCS used an automatic telephone dialing system to contact Skiff's cellular phone without his express prior consent.

26.     On the first occasion, Skiff instructed CCS that he was withholding his consent for CCS to contact him on his cellular phone using an automatic telephone dialing system or otherwise and that CCS should cease contacting him on his cellular phone.

27.     Despite Skiff's instructions, CCS continued to contact Skiff using an automatic telephone dialing system.

28.     By letter dated January 8, 2018, sent certified mail / return receipt requested to CCS and BMW, Skiff advised CCS that he disputed the amount of the Alleged Debt.  A true and correct copy of the January 8 letter is annexed hereto as **Exhibit H**.

## COUNT I
*(Breach of Contract Against BMW)*

29.     Skiff repeats and realleges each and every allegation set forth in paragraphs 1 through 28 of this complaint with the same force and effect as if fully set forth at length herein.

30.     BMW has refused to perform its duty to provide the Gap Waiver under the Lease.

31.     BMW has denied the Gap Waiver to Skiff in connection with the totaling of the Vehicle and has otherwise failed to perform its obligations under the Lease despite the fact that the Lease provides for such Gap Waiver and Skiff has complied with the terms of the Lease.

32.     Skiff has no adequate remedy at law.

33.     The Gap Waiver which BMW is obligated to provide applies to each and every aspect of the Alleged Debt.

34.     BMW has breached the terms of the Lease by refusing to honor Skiff's requests that it comply with the Gap Waiver.

35.     Skiff is entitled to judgment declaring that BMW is obligated to provide the Gap Waiver in the amount of the Alleged Debt.

36.     Skiff is entitled to judgment declaring that BMW is obligated to reimburse him for the legal fees and expenses incurred in connection with the above action.

## COUNT II
*(Breach of Implied Covenant of Good Faith and Fair Dealing)*

37.     Skiff repeats and realleges each and every allegation set forth in paragraphs 1 through 36 of this complaint with the same force and effect as if fully set forth at length herein.

38.     Skiff has suffered damages as a result of BMW's bad faith refusal to acknowledge his right to the Gap Waiver under the Lease.

39.     The denial of the Gap Waiver by BMW is contrived and baseless, and BMW's refusal to honor its obligations under the Lease is without a reasonable basis in law or fact.

40.     BMW's conduct is in its own self-interest and intended to deprive Skiff of the Gap Waiver for which he made Monthly Payments.

41.     BMW's bad faith failure to provide the Gap Waiver despite its acceptance of Monthly Payments from Skiff is part of a pattern of improper conduct directed at the public generally for the purpose of avoiding payment of and/or credit for expenses covered by the Gap Waiver, which Monthly Payments were made, at least in part, to cover.

42.     BMW is obligated to reimburse Skiff for the damages incurred by virtue of BMW's breaches of the Lease and bad faith refusal to afford him the Gap Waiver, including the attorneys' fees and expenses incurred in connection with the above action.

## COUNT III
*(Violation of Telephone Consumer Protection Act,*
*47 U.S.C. § 227, 47 C.F.R. § 64.1200, Against BMW)*

43.     Skiff repeats and realleges each and every allegation set forth in paragraphs 1 through 42 of this complaint with the same force and effect as if fully set forth at length herein.

44.     At all times relevant herein, Skiff's business and/or contractual relationship with BMW has been and is limited to the Lease.

7

45.     At all times relevant herein, Skiff has never provided written consent to BMW through the Lease or otherwise to contact him on his cellular phone using an automatic telephone dialing system or otherwise.

46.     On at least three occasions, in August and September 2017, BMW did in fact use an automatic telephone dialing system to contact Skiff without his prior consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, 47 C.F.R. § 64.1200 (the "**TCPA**").

47.     Despite being specifically instructed by Skiff that BMW lacked his consent to contact his cellular phone using an automatic telephone dialing system or otherwise, BMW continued to contact Skiff's cellular phone using an automatic telephone dialing system.

48.     As a result of the aforementioned unlawful conduct, Skiff is entitled to recover from BMW the maximum amount of statutory damages in an amount not less than $1,500, together with attorneys' fees and costs expended in connection with the above action.

## COUNT IV
*(Breach of Contract Against GEICO)*

49.     Skiff repeats and realleges each and every allegation set forth in paragraphs 1 through 48 of this complaint with the same force and effect as if fully set forth at length herein.

50.     GEICO has refused to perform its duty to pay on all claims covered under the Policy in an expeditious manner.

51.     GEICO unnecessarily and unreasonably delayed remitting the Payoff to BMW incurred in connection with the total loss of the Vehicle and has otherwise failed to perform its obligations as the insurer of Skiff despite the fact that the Policy provides for such coverage and Skiff has acted in accordance with the terms of the Policy.

52.     Skiff has no adequate remedy at law.

53.     The coverage which GEICO is obligated to provide applies to such portion of the Alleged Debt arising from its delay in remitting the Payoff to BMW, if any.

54.     GEICO has beached the terms of the Policy by refusing to honor Skiff's requests for expeditious coverage.

55.     Skiff is entitled to judgment declaring that GEICO is obligated to pay any portion of the Alleged Debt attributable to its delay in remitting the Payoff to BMW.

## COUNT V
*(Breach of Covenant of Good Faith and Fair Dealing Against GEICO)*

56.     Skiff repeats and realleges each and every allegation set forth in paragraphs 1 through 55 of this complaint with the same force and effect as if fully set forth at length herein.

57.     Skiff has suffered damages as a result of GEICO's bad faith delay in remitting the Payoff to BMW, as required under the Policy.

58.     GEICO's delay in remitting the Payoff to BMW is contrived and baseless, and its failure and refusal to honor its obligations under the Policy to adjust Skiff's claim in an expeditious manner is without a reasonable basis in law or fact.

59.     GEICO's conduct is in its own self-interest and intended to deprive Skiff of valuable insurance coverage for which he paid premiums.

60.     GEICO's bad faith failure to provide coverage despite its acceptance of premiums from Skiff is part of a pattern of improper conduct directed at the public generally for the purpose of avoiding payment of expenses which premiums were paid to cover.

61.     GEICO is obligated to reimburse Skiff for the damages incurred by virtue of its breach of the Policy and bad faith failure and refusal to remit the Payoff to BMW in a timely manner, including the attorneys' fees and expenses incurred in connection with the above action.

## COUNT VI
*(Violation of Telephone Consumer Protection Act,*
*47 U.S.C. § 227, 47 C.F.R. § 64.1200, Against CCS)*

62.     Skiff repeats and realleges each and every allegation set forth in paragraphs 1 through 61 of this complaint with the same force and effect as if fully set forth at length herein.

63.     At all times relevant herein, Skiff has not had any business or contractual relationship or otherwise with CCS.

64.     At all times relevant herein, Skiff has never provided written consent or otherwise to CCS to contact him on his cellular phone using an automatic telephone dialing system or otherwise.

65.     On at least four occasions, in December 2017 and January 2018, CCS did in fact use an automatic telephone dialing system to contact Skiff without his prior consent in violation of the TCPA.

66.     Despite being specifically instructed by Skiff that CCS lacked his consent to contact his cellular phone using an automatic telephone dialing system or otherwise, CCS continued to contact Skiff's cellular phone using an automatic telephone dialing system.

67.     As a result of the aforementioned unlawful conduct, Skiff is entitled to recover from CCS the maximum amount of statutory damages in an amount not less than $2,000, together with attorneys' fees and costs expended in connection with the above action.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

**WHEREFORE**, Plaintiff Gregory Skiff demands judgment:

A.     declaring that the entirety of the Alleged Debt is covered by the Gap Waiver under the Lease;

B.     declaring that any portion of the Alleged Debt resulting from GEICO's delay in remitting the Payoff to BMW is due and owing from GEICO under the terms of the Policy;

C.     directing BMW to cease all collection efforts against Skiff regarding the Alleged Debt;

D.     directing BMW to notify all credit bureaus and reporting agencies that all of Skiff's accounts with BMW have a balance of $0 and that Skiff has at all times made payments on said accounts in a timely manner;

E.     against BMW, awarding Skiff statutory damages for violations of the TCPA in an amount not less than $1,500;

F.     against CCS, awarding Skiff statutory damages for violations of the TCPA in an amount not less than $2,000;

G.     against all Defendants, jointly and severally, awarding Skiff reimbursement of his attorneys' fees, costs and disbursements expended in connection with the above action; and

H.     granting such other and further relief as the Court deems just and proper.

*Pro se Plaintiff Gregory J. Skiff*

By: _____

Gregory J. Skiff

Dated: January 15, 2018

## JURY DEMAND

Plaintiff hereby demands trial by jury of all issues so triable.

Gregory J. Skiff

Dated: January 15, 2018

## CERTIFICATION

Pursuant to *R.* 4:5-1(b)(2), applicable to this action under *R.* 6:3-1, I certify that, to the best of my knowledge, information and belief, the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding and there does not exist any other person or entity at this time who should be but has not been joined in this action.  No other action or arbitration is contemplated by Plaintiff at this time.

Pursuant to *R.* 1:38-7(c)(2), I certify that confidential personal identifiers have been redacted from documents now submitted to this court, and will be redacted from all documents submitted in the future in accordance with *R.* 1:38-7(b).

*I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I may be subject to punishment.*

Gregory J. Skiff

Dated: January 15, 2018

**BMW Financial Services**
# Motor Vehicle Lease Agreement (Closed End) - New Jersey

188140

## 1. PARTIES

| Lessor (Center) Name, Address and Telephone No. | Lessee and Co-Lessee Name and Address | Vehicle Garaging Address (If Different) |
|---|---|---|
| PAUL MILLER BMW<br>1515 RT 23 SOUTH<br>WAYNE, NJ 07470<br>9736966060 | GREGORY J SKIFF<br>94 BOWERS ST FL 3<br>JERSEY CITY NJ 07307 | Billing Address (If Different) |

**2. Agreement to Lease.** This Motor Vehicle Lease Agreement ("Lease") is entered into between the lessee and co-lessee ("Lessee") and the lessor ("Lessor") named above. Unless otherwise specified, "I," "me" and "my" refer to the Lessee and "you" and "your" refer to the Lessor or Lessor's assignee. "Vehicle" refers to the leased vehicle described below. "Assignee" refers to BMW Financial Services NA, LLC ("BMW FS") or, if this box is checked ☐ to Financial Services Vehicle Trust. BMW FS will administer this Lease on behalf of itself or any assignee. The consumer lease disclosures contained in this Lease are made on behalf of Lessor and its successors or assignees.

**3. Date of Lease, Lease Term and Scheduled Maturity Date.** This Lease is entered into on 04/27/2015 for the scheduled Lease Term of 36 months with a Scheduled Maturity Date of 04/27/18.

## 4. VEHICLE DESCRIPTION

| A. Leased Vehicle ☐ New ☐ Demo ☐ Used | Model Year | Make & Model | VIN | Odometer | Primary Use: ☐ Personal, Family or Household ☐ Business, Commercial or Agricultural |
|---|---|---|---|---|---|
| | 2015 | BMW 335XI | WBA3B9G52FNR93426 | 411 | |

If the odometer reads in excess of 1,000 miles, the prior use of the Vehicle: ☐ Personal/Family ☐ Demonstrator ☐ Livery ☐ Unknown ☐ Police ☐ Prior Wreckage ☐ Rental

Transmission: ☒ Auto ☐ Manual — Brakes: ☒ Power ☐ Manual — Steering: ☒ Power ☐ Manual — ☐ A/C ☐ No. of Cylinders 6 ☒ Monroney MSRP $ 64485.00

☐ Telephone ☐ CD Player ☐ N/A (specify) ☐ N/A (specify) ☐ N/A (specify)

| B. Trade-In | Model Year | Make | Model | Agreed Upon Value | Prior Credit or Lease Balance | Net Trade-In Value |
|---|---|---|---|---|---|---|
| | N/A | | | N/A | N/A | N/A |

| 5. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized in Section 9) | 6. MONTHLY PAYMENTS | 7. OTHER CHARGES (Not part of my Monthly Payments) | 8. TOTAL OF PAYMENTS (The amount I will have paid by the end of the Lease Term) |
|---|---|---|---|
| $ 3822.79 | My first monthly payment of $ 594.00 is due on 04/27/2015 followed by 35 payments of $ 594.00 due on the 27TH day of each month. The total of my monthly payments is $ 21384.00 | A. Disposition Fee (if I do not purchase the Vehicle) $ 350<br>B. N/A $ N/A<br>TOTAL $ 350.00 | $ 24962.79 |

## 9. AMOUNT DUE AT LEASE SIGNING OR DELIVERY

**A. Amount Due at Lease Signing or Delivery**

| | |
|---|---|
| 1. Capitalized Cost Reduction | $ 0.00 |
| 2. First Monthly Payment | $ 594.00 |
| 3. Refundable Security Deposit | $ N/A |
| 4. Initial Title Fees | $ N/A |
| 5. Initial Registration Fees | $ 323.30 |
| 6. Initial License Fees | $ N/A |
| 7. Sales/Use Tax | $ 1573.46 |
| 8. Acquisition Fee (if not capitalized) | $ 795.00 |
| 9. Sales Tax on Capitalized Cost Reduction | $ N/A |
| 10. Supp. Title Fee | $ 232.03 |
| 11. DOC FEE | $ 299.00 |
| 12. NJ TIRE FEE | $ 6.00 |
| 13. | $ N/A |
| TOTAL | $ 3822.79 |

**B. How the Amount Due at Lease Signing or Delivery Will Be Paid**

| | |
|---|---|
| 1. Net Trade-In Allowance | $ 0.00 |
| 2. Rebates and Noncash Credits | $ N/A |
| 3. Amount to be Paid in Cash | $ 3822.79 |
| TOTAL | $ 3822.79 |

## 10. MY MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW

| | |
|---|---|
| A. Gross Capitalized Cost. The agreed upon value of the Vehicle ($ 58008.41) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) (See Section 13 for an itemization of this amount). | $ 58008.41 |
| B. Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash I pay that reduces the Gross Capitalized Cost. | - $ 0.00 |
| C. Adjusted Capitalized Cost. The amount used in calculating my Base Monthly Payment. | = $ 58008.41 |
| D. Residual Value. The value of the Vehicle at the end of the Lease used in calculating my Base Monthly Payment. | - $ 41270.40 |
| E. Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term. | = $ 16738.01 |
| F. Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts. | + $ 4645.99 |
| G. Total of Base Monthly Payments. The Depreciation and any Amortized Amounts plus the Rent Charge. | = $ 21384.00 |
| H. Lease Payments. The number of payments in my Lease. | ÷ 36 |
| I. Base Monthly Payment. | = $ 594.00 |
| J. Monthly Sales/Use Tax. | + $ N/A |
| K. N/A | + $ N/A |
| L. Total Monthly Payment. | = $ 594.00 |

**Early Termination.** I may have to pay a substantial charge if I end this Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.

**11. Excessive Wear and Use.** I may be charged for excessive wear based on your standards for normal use and for mileage in excess of total miles over the scheduled Lease Term of 36,000 miles, at the rate of .20 cents per mile.

**12. *Purchase Option at End of Lease Term.*** I have an option to purchase the Vehicle ("as is") at the Scheduled Termination of the Lease for its Residual Value of $ 41270.40. The purchase option price does not include official fees, such as those for taxes, title, registration and license tags. See Section 30 for more information.

**Other Important Terms.** See the front and back of this Lease for additional information on early termination, purchase options, and maintenance responsibilities, warranties, default charges, insurance, and any security interest, if applicable.

## 13. ITEMIZATION OF GROSS CAPITALIZED COST

| | | | |
|---|---|---|---|
| A. Agreed Upon Value of Vehicle | $ 58008.41 | H. Extended Warranty | $ N/A |
| B. Initial Title, License & Registration Fees | $ N/A | I. Prior Credit or Lease Balance* | $ N/A |
| C. Sales/Use Tax | $ N/A | J. Acquisition Fee | $ N/A |
| D. Federal Luxury Tax | $ | K. Supp. Title Fee | $ N/A |
| E. Sales Tax on Capitalized Cost Reduction | $ N/A | L. Other | $ N/A |
| F. Maintenance Agreement | $ N/A | M. Other | $ N/A |
| G. Mechanical Breakdown Protection | $ N/A | TOTAL | $ 58008.41 |

*Leave blank unless Lessor has paid prior credit or lease balance.

## 14. ESTIMATED OFFICIAL FEES AND TAXES

$ 2134.79 This is an estimate of the total amount I agree to pay for official and license fees, registration, title and taxes (including personal property taxes) over the Lease Term including any extensions of the Lease Term, whether included in my Monthly Payment, Amount Due at Lease Signing or Delivery, or separately billed. The actual total of Official Fees and Taxes may be higher or lower, depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. This estimate is based on my Garaging Address and may increase if I move or if tax rates change. For some of these items, we may invoice you after the taxing authority has billed us, sometimes after the lease terminates.

## 15. OPTIONAL PRODUCTS AND SERVICES

I am not required to buy any of the optional products and services listed below. These products and/or services will not be provided unless I check the appropriate box, fill in all necessary information, initial below and I am accepted by the provider. Because these products and or services are not provided by the Lessor, I understand that I must pursue all related matters, including refunds, through the listed Provider. By initialing below, I agree that I have received and read a notice of the terms of the product or service and I want to obtain the product or service for the charge shown. A portion of the charge may be retained by Lessor (Center).

| | Provider | Term (Months) | Charge | Lessee/Co-Lessee Initials |
|---|---|---|---|---|
| ☐ Maintenance Agreement | N/A | N/A | $ N/A | |
| ☐ Mechanical Breakdown Protection | N/A | N/A | $ N/A | |
| ☐ N/A | N/A | N/A | $ N/A | |

Mileage Allowance/Refund.
36,000 (Miles/Year) I agree to this Mileage Allowance for the term of this Lease. My Total Single Payment and Residual Value for this Lease have been calculated, in part, by using this Mileage Allowance.

☐ If this box is checked, I have elected a High Mileage Allowance. I may receive a refund of N/A cents per unused mile for the unused miles between N/A miles and N/A miles, unless (a) the Vehicle is destroyed or stolen, (b) I default or terminate this Lease early, (c) I purchase the Vehicle, or (d) the refund is less than $1. Any refund will be reduced by any amount I owe under this Lease at the Scheduled Termination.

## 16. WARRANTIES

The Vehicle is subject to the following express warranties. If the Vehicle is new, the Vehicle is subject to the standard manufacturer's new vehicle warranty. The Vehicle is also covered by the following, if checked:
☐ Remainder of the standard manufacturer's new vehicle warranty if the Vehicle is not a new vehicle.
☐ N/A

UNLESS A LESSOR'S WARRANTY IS DISCLOSED ABOVE, LESSOR, TO THE EXTENT PERMITTED BY LAW, (1) MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, AS TO THE VEHICLE OR ANY OF ITS PARTS OR ACCESSORIES AND (2) MAKES NO WARRANTY OF MERCHANTABILITY OR FITNESS OF THE VEHICLE FOR ANY PARTICULAR PURPOSE. I ACKNOWLEDGE THAT I AM LEASING THE VEHICLE FROM THE LESSOR "AS IS."

## 17. INSURANCE VERIFICATION

I agree to maintain the insurance coverage described in Section 23. I affirm that such insurance is in force on the date of this Lease. I authorize Lessor and its assignees to speak to my insurance agent or company, and any future insurance agents or companies, about my coverage for the leased Vehicle.

GEICO — Insurance Company; 4274190570 — Policy No.; Coverage Verified (Center Employee's Initials)

GEICO — Agent Name; 300 CROSSPOINT PKWY GETZVILLE NY 14068 — Address; 8008413000 — Phone No.

All matters regarding insurance should be sent by e-mail to insuranceinfo@bmwfs.com; or faxed to 888-725-8456.

## ADDITIONAL NEW JERSEY LEASE DISCLOSURES

TOTAL COST OF LEASE. Assuming I do not default on my obligations under this Lease and that I exercise the Purchase Option at End of Lease Term, the Total Cost of this Lease is $ 65633.19. This disclosure is required and calculated as specified by New Jersey law. The amount is calculated by adding: (1) The Amount Due at Lease Signing or Delivery (minus the First Monthly Payment and Refundable Security Deposit); plus (2) the Total of Monthly Payments; plus (3) any amounts imposed on me at the end of the Lease Term and (4) the Residual Value (the Purchase Option price). Because this disclosure is based on certain assumptions and does not include all costs (such as insurance), my actual total cost may differ.

## 18. LESSEE NOTICES AND SIGNATURES

By signing below, I acknowledge that:
- This Lease is completely filled out;
- I have no ownership rights in the Vehicle unless and until I exercise my option to purchase the Vehicle;
- I have read both sides of this Lease carefully and agree to all of its terms; and
- I have received a completely filled in copy of this Lease.

NOTICE: THE LESSEE AND LESSOR SHALL BE ENTITLED TO REVIEW THIS LEASE AGREEMENT FOR ONE BUSINESS DAY BEFORE SIGNING THE AGREEMENT

X [signature] Lessee — X Lessee

GREGORY J. SKIFF — By (Print Name & Title if Corporation) — By (Print Name & Title if Corporation)

## 19. GUARANTY

I jointly and severally guarantee payment and performance of all promises contained in this Lease. Upon default, Lessor may proceed immediately against me without first proceeding against the Lessee. My liability will be unconditional and will not be affected by any settlement, extension, renewal or modification of this Lease whether or not by operation of law. I waive all right to notices of every kind, including rights to demand and presentment. I agree to pay all expenses (including reasonable attorney's fees and legal expenses) you incur if you have to enforce this Guaranty.

Guarantor's Signature: X — Guarantor's Signature X

Name — Name N/A

Address — Address

## 20. LESSOR'S ACCEPTANCE AND ASSIGNMENT

By signing below, Lessor (1) accepts the terms, conditions and obligations of this Lease and (2) assigns all right, title and interest in the Vehicle and this Lease to the Assignee listed in Section 2 above. This Lease, including all amounts to become due under it, and any guaranty, are subject to the provisions of the Center Agreement between Lessor and BMW FS.

Lessor Name Paul Miller BMW — Signature of Authorized Representative [signature]

2205 [illegible] NJ



## OBLIGATIONS DURING THIS LEASE

21. Vehicle Use. I agree not to use (or permit others to use) the Vehicle: (a) in any way that violates the law or the terms of my insurance policy or this Lease; (b) to transport goods or people for hire, lease or rental to others; (c) outside the state where it was first titled for more than 30 days without your prior written consent; or (d) outside the United States, except for less than 30 days in Canada. I will not allow an uninsured person to operate the Vehicle at any time, or allow any third party, other than my spouse, to operate the Vehicle without written permission from you. I will not physically change the Vehicle's body or interior in any way unless I first get your written consent.

22. Vehicle Maintenance, Service, Repairs, and Reconditioning. I agree to maintain, service, repair, and recondition the Vehicle during the Lease Term with new and genuine BMW manufacturer's original equipment replacement parts as recommended in the Vehicle owner's manual. I will keep complete maintenance records and return them with the Vehicle.

I am responsible for repairs of all collision, accident, and other physical damage that is not a result of normal wear and use. These repairs include, but are not limited to, those necessary to return the Vehicle to its pre-damage condition, including, but not limited to, repairing damage to exterior panels and components, structural components, vehicle safety systems such as airbag systems and seatbelts, and the Vehicle's interior. All repairs must be made with new and genuine manufacturer's original equipment replacement parts. I will discuss these requirements with my insurance company prior to signing my insurance agreement, damage repair estimate, or before authorizing any damage repair work. If I have not had the repairs made before the Vehicle is returned at or before the end of the scheduled Lease Term, I will pay the estimated cost of such repairs to restore the Vehicle to its pre-damage condition, even if the repairs are made after the Vehicle is returned.

If the Vehicle's odometer becomes inoperative or malfunctions, I agree to notify you and have the odometer repaired within 30 days. I agree not to make any alterations that decrease the Vehicle's value or usefulness or that violate the law. If I add non-standard equipment to the Vehicle, I will return it to original manufacturer specifications before the end of the Lease Term. If the non-standard equipment cannot be removed or modified without decreasing the Vehicle's value or usefulness when the Vehicle is returned to you, the equipment will become your property, and I may be billed in accordance with Section 35 below. You may inspect the Vehicle at any reasonable time.

> NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.

23. Required Insurance. During the term of this Lease and until I return the Vehicle, I agree to maintain the following types and amounts of primary insurance: (a) personal liability for bodily injury or death to any one person for not less than $100,000 and for any one occurrence for not less than $300,000; (b) property damage liability for not less than $50,000; (c) comprehensive liability, including fire and theft, for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000; (d) collision liability for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000. The coverage will name you as an additional insured and loss payee. I will provide you with at least 30 days advance notice of cancellation. You have the right to endorse my name on any insurance check or settlement you receive. You also have the right to speak to any insurance company about my insurance coverage.

Except to the extent required by the motor vehicle financial responsibility laws of the applicable state or otherwise by law, I acknowledge that you do not extend any of your motor vehicle financial responsibility or provide insurance coverage to me, any authorized additional driver(s), passengers or third parties through this Lease. If valid automobile liability insurance or self insurance is available on any basis for me, additional authorized driver(s) or any other driver and such insurance or self insurance satisfies the applicable state motor vehicle financial responsibility law, then you extend none of your motor vehicle financial responsibility. However, if I and any additional authorized driver(s) are in compliance with the terms and conditions of this Lease and if you are obligated to extend your motor vehicle financial responsibility to me, any additional authorized driver(s) or third parties, then your obligation is limited to the applicable state minimum financial responsibility amounts. Unless required by law, your financial responsibility shall not extend to any claim made by passenger while riding in or on or getting in or out of Vehicle. Your financial responsibility shall not extend to liability imposed or assumed by anyone under any worker's compensation act, plan or contract.

Except as required by law, you do not provide Personal Injury Protection, No Fault Benefits or Medical Payment Coverage (PIP) or Uninsured/Underinsured Motorist Protection (UM/UIM) through this Lease. If you are required by law to provide PIP and/or UM/UIM, I expressly select such protection in the minimum limits with maximum deductible and expressly waive and reject PIP and/or UM/UIM limits in excess of the minimum limits required by law.

24. Registration, Titling, and Taxes. I agree to pay registration, title, license, inspection fees and other official fees and taxes in connection with the Vehicle when due. You may, at your discretion, pay these fees or taxes to protect your interest in the Vehicle. If you pay such fees or taxes on my behalf, I agree to reimburse you when I am billed. If I fail to reimburse you within 60 days after I am billed, then I will pay you a monthly late charge, until the unpaid balance of the fees and taxes has been paid in full. The amount of each such late charge will not exceed 1.5% of the outstanding unpaid balance of the fees and taxes then due, or the maximum amount permitted by law, whichever is less. The remedies described in this Section 24 are in addition to any remedies you may have pursuant to Section 26.

If I move to another location during the Lease Term or it becomes necessary for you to correct any title or registration deficiencies, or to perfect your interest in the Vehicle, whether as a result of my failure to cooperate or other action or inaction on my part, I agree to pay you a $30 service charge in addition to the actual fees or taxes, unless prohibited by law, to process registration, title and license documents.

25. Payments, Late Charge, Returned Payment Charge, Fines, and Traffic Tickets. If you do not receive my total Monthly Payment within 10 days after it is due, I agree to pay a late charge of $30 or 5% of the amount of the payment that is late, whichever is greater, but not to exceed any limit under applicable law. If any payment is returned to you unpaid for any reason, or if any electronic debit authorization is not paid, I agree to pay you a $30 service charge per item when I am billed.

If you receive notice of any third-party charges related to the Vehicle (including but not limited to fines, traffic tickets, parking tickets, toll violations, towing fees, storage fees, or repair bills), I will pay you a $30 service charge per item whether or not you pay such third-party charges. You may, at your discretion, pay these charges to protect your interest in the Vehicle. If you pay such charges on my behalf, I agree to reimburse you when I am billed. If I fail to reimburse you within 60 days after I am billed, then I will pay you a monthly late charge, until the unpaid balance of such third-party charges has been paid in full. The amount of each such late charge will not exceed 1.5% of the outstanding unpaid balance of the fees and taxes then due, or the maximum amount permitted by law, whichever is less. I further agree to pay you any and all costs you incur associated with my failure to pay such fines, charges or traffic tickets, including legal costs and reasonable attorneys' fees as allowed by applicable law. The remedies described in this Section 25 are in addition to any remedies you may have pursuant to Section 26.

26. Default and Remedies. I will be in default under this Lease if:

(a) I fail to make a Monthly Payment when due;
(b) I fail to maintain the required insurance;
(c) I fail to return the Vehicle at the end of the Lease Term;
(d) I fail to keep any of my promises under this Lease;
(e) I abandon the Vehicle;
(f) I or a guarantor become(s) insolvent or die(s); or
(g) Any information in my credit application or a guarantor's credit application is false or misleading.

If I am in default, following any applicable statutory right to cure, you may do any or all of the following:

(a) Terminate this Lease and my rights to possess and use the Vehicle;
(b) Take possession of the Vehicle by any method permitted by law;
(c) Pursue any other remedy permitted by law;
(d) Dispose of any personal or other property in the Vehicle at the time of repossession if I do not reclaim it within 10 days;
(e) Require that I pay the sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease except Excess Wear and Use and Excess Mileage charges; plus (3) the amount by which the Adjusted Lease Balance (explained in Section 33) exceeds the Realized Value of the Vehicle (Section 34); plus (4) all of your expenses for taking these actions, including, but not limited to expenses for repossession, transportation, storage, and/or sale of the Vehicle; plus (5) all fees and costs of collections, including reasonable attorneys' fees, court costs, interest, and other related expenses for all losses you incur in connection with my default of this Lease. Furthermore, if I do not pay these amounts when you ask, you may charge me interest at a rate not exceeding the highest lawful rate until I pay;
(f) If the vehicle has an electronic tracking device, I agree that you may use the device to find the vehicle.

27. Vehicle Loss or Damage. I agree to immediately notify you if the Vehicle is damaged or destroyed in an accident, stolen, abandoned, or confiscated by a police or other governmental agency and subject to forfeiture. In that event, you reserve the right to terminate this Lease and my liability will either be: (a) calculated under Section 28 below, if I am in compliance with my insurance obligations; or (b) calculated under Section 26 above, if I am not in compliance with my insurance obligations. If the Vehicle is stolen or destroyed, another vehicle may be substituted in its place only if you agree to the substitution. You have no obligation to provide a substitution vehicle. If the Vehicle is damaged and you do not terminate this Lease because the Vehicle is reasonably repairable, I agree to make the repairs in accordance with Section 22 above at my expense.

28. "Gap Amount" Waiver. If I am in compliance with my insurance obligations under this Lease and the Vehicle is damaged, stolen or destroyed and considered a total loss under my insurance coverage, I will not be obligated to pay you the gap amount (the difference between the Adjusted Lease Balance and the actual cash value of the Vehicle as of the date of loss) if the claim for total loss is actually paid to you by my insurance company. However, I will be obligated to pay you: (1) any and all amounts due and owing needed to satisfy my obligations under this Lease (including past due Monthly Payments and any official fees and taxes assessed or billed in connection with this Lease and the Vehicle); plus (2) any amounts (including Monthly Payments) that become due pending receipt of the insurance proceeds, plus (3) the deductible amount under my insurance policy, plus (4) any amounts deducted from the actual cash value of the Vehicle by the insurance carrier. If as of the date of loss, I do not have a physical damage insurance policy that complies with the insurance requirements set forth in this Lease, no gap amount waiver applies and the amount of my liability will be determined as set forth in Section 26.

29. Power of Attorney. I appoint you, to the extent permitted by law, through your officer or employee, as my attorney-in-fact. My grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations I owe under this Lease are paid in full. As my attorney-in-fact, you can sign on my behalf all Certificates of Ownership, Registration Cards, applications, affidavits, or any other documents required to register and properly perfect your interest in the Vehicle; transfer my entire interest in the Vehicle as part of a repossession and sale; act on my behalf in insurance matters relating to the Vehicle, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf; and cancel any Credit Life, Credit Disability, GAP Coverage, Extended Warranty, or other optional insurance financed under this Lease, and apply the refunded premium or cost to my outstanding balance if I am in default. Should an original power of attorney be necessary to accomplish any of the preceding, I agree to execute a separate (identical) power of attorney document and provide you with same.

## ENDING MY LEASE

30. Purchase Option. I have an option to purchase the Vehicle AS-IS, WHERE-IS. If I want to buy the Vehicle, I will notify you in advance and agree to complete any documents you require for the purchase. I also agree to re-register and re-title the Vehicle at my own expense in my name at the time I purchase it. If I fail to do so, you reserve the right to cancel the registration. At the Scheduled Termination of the Lease, the purchase price will be the Residual Value (Section 10.D). Prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (Section 33). In either case, I agree to also pay any other amounts due or outstanding under the Lease at the time of purchase such as any official fees, unpaid Monthly Payments or late charges.

31. Vehicle Return. If I do not purchase the Vehicle, I agree to return it to the place you specify with all parts and accessories and in good working order. Upon return, I agree to complete and sign an odometer disclosure statement and a vehicle inspection report, which may be used in determining any excess wear and use and/or excess mileage. If I do not return the Vehicle at the end of my Lease Term, I am in default and will continue to pay an amount equal to the Monthly Payment for each month until the time that I return the Vehicle. Payment of this amount does not give me the right to keep the Vehicle nor does it automatically extend this Lease.

32. Scheduled Termination of the Lease. Unless I terminate my Lease early or purchase the Vehicle, my Lease will terminate on the Scheduled Maturity Date, at which time, I agree to pay you: (a) a $350 Disposition Fee, plus (b) any unpaid Monthly Payments then due and other amounts needed to satisfy my obligations under this Lease, plus (c) any Excess Mileage and Excess Wear and Use charges (Section 11), plus (d) any official fees or taxes assessed or billed in connection with this Lease.

33. Early Termination of the Lease. I may terminate this Lease at any time by purchasing the Vehicle (Section 30) or by returning the Vehicle to a location selected by you, if I am in full compliance with the Lease and satisfy all of my Early Termination obligations. If I do not purchase the Vehicle, I may choose one of the following options to determine my Early Termination liability:

> Option A. I agree to pay the sum of: (1) all remaining Monthly Payments; plus (2) any past due Monthly Payments; plus (3) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease; plus (4) any Excess Wear and Use and Mileage Charges; plus (5) a $350 Disposition Fee.

> Option B. I agree to pay the sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease except Excess Wear and Use and Excess Mileage charges; plus (3) a $350 Disposition Fee; plus (4) the amount by which the Adjusted Lease Balance (explained below) exceeds the Realized Value of the Vehicle (Section 34). However, should my Early Termination Liability calculated under this Option exceed what I would have owed had I selected Option A, you will waive the difference and my liability will be capped at Option A.

Under either option, you may apply some or all of my Security Deposit to what I owe and I will remain liable for personal property taxes that may be assessed and/or billed after the Lease terminates.

> The "Adjusted Lease Balance" is determined at any given time by subtracting the scheduled Base Monthly Payments received through the early termination date from the Adjusted Capitalized Cost and adding to the difference the cumulative Rent Charge received through the early termination date. The Rent Charge is calculated according to the "constant yield method". Under the constant yield method, each month's rent charge is earned in advance by multiplying the constant rate implicit in the Lease times the Adjusted Lease Balance. The Rent Charge calculations are based on the assumption that Lessor will receive the Monthly Payments on the exact due dates.

34. Realized Value of the Vehicle. For the purpose of calculating my Early Termination liability (Section 33), the Realized Value of the Vehicle is (a) the price you receive for the Vehicle upon disposition in a commercially reasonable manner or (b) a price agreed to by you and me in a separate writing. If the Vehicle is a total loss as set forth in Section 27 above, the amount of any deductible and the proceeds of the settlement of the insurance claim you receive are the "Realized Value." The Realized Value may also be determined by an appraisal of the wholesale value of the Vehicle, which I may obtain, at my own expense from a professional, independent appraiser agreeable to both of us. If I obtain such an appraisal within 10 days after the Vehicle is returned to you, the appraisal will be the final and binding Realized Value.

35. Excessive Wear and Use. I agree to pay you the costs of all repairs to the Vehicle that are not the result of normal wear and use, whether or not you actually repair the Vehicle. Excessive wear and use includes, but is not limited to:

(a) inoperative electrical or mechanical parts;
(b) dented, scratched, chipped, rusted, pitted, broken or mismatched body parts, paint, vehicle identification items, trim or grill work;
(c) non-functioning, scratched, cracked, pitted or broken glass or lights;
(d) missing equipment, parts, accessories or adornments;
(e) torn, damaged, burned, or stained interior;
(f) repair of any damage that makes the Vehicle unlawful or unsafe to drive;
(g) damage due to installation or removal of non-manufacturer, aftermarket or replacement parts;
(h) damage (including damage to the engine) due to failure to maintain the Vehicle in accordance with Section 22; or
(i) tires with tread depth of less than 1/8" remaining at the shallowest point, and/or tires that are not all of the same grade, quantity or quality as those delivered with the Vehicle.

I may obtain at the end of the lease term, at my expense, a professional appraisal of the amount required to repair or replace parts or the amount which any excessive wear and use reduces the value of the Vehicle. This professional appraisal shall be performed by an independent third party agreed to by you and me, which appraisal shall be final and binding on us. If I fail to pay any excess wear and use, excess mileage or other lease end charges within thirty days of the due date indicated on my end of lease bill, I will pay you interest on the unpaid balance of these charges at the rate of 18 percent per annum, if permitted by law, or the maximum rate permitted, until paid in full.

I agree to pay state and local taxes that may be due on amounts owed for lease end charges, including but not limited to excess wear and use and excess mileage fees.

## ADDITIONAL INFORMATION

36. Indemnification. I agree to indemnify, defend and hold you harmless from all claims, liabilities, suits, losses, damages and expenses (including attorney's fees and court costs) arising out of the condition, maintenance, use, ownership or operation of the Vehicle, including claims made under the strict liability doctrine.

37. Refundable Security Deposit. You may use some or all of my Security Deposit to pay any amount I owe under this Lease at the end of my Lease Term or upon early termination of the Lease. I will not earn any interest on my Security Deposit. After I have paid all my obligations under this Lease, you will refund to me any part of my Security Deposit that is not used to pay what I owe you.

38. Assignment. You may assign your interests under this Lease without my consent. I MAY NOT TRANSFER OR SUBLEASE THIS VEHICLE TO A THIRD PARTY OR ASSIGN THE LEASE OR ANY RIGHTS UNDER IT WITHOUT YOUR PRIOR WRITTEN APPROVAL, WHICH YOU MAY WITHHOLD IN YOUR SOLE JUDGMENT.

39. Notices. All correspondence and notices will be sent to me at my Billing Address shown on this Lease unless I give you a different address in writing.

40. Other Terms. Waiver. You may waive or delay enforcement of your rights under this Lease without affecting your rights on future defaults. Severability. Any part of this Lease that is not enforceable shall not affect the validity of the remainder of this Lease. Joint Liability. If more than one Lessee signs this Lease, each Lessee shall be jointly and severally liable for all obligations under this Lease. Choice of Law. Except as may otherwise be provided by law, this Lease will be subject to the laws of the state where I sign it. In the event that both parties agree not to arbitrate in accordance with Section 41 below, any dispute shall be brought in a court located in the state of Lessor's place of business. Entire Agreement. This Lease describes all agreements between us with respect to the Lease of the Vehicle. All prior agreements, whether oral or in writing, are superseded. Maintaining Payments. I may not change or stop any Monthly Payments for any reason, even if I do not receive an invoice, and even if the Vehicle is stolen, destroyed, seized by the government or the court, experiences mechanical problems, or does not satisfactorily perform. Lessee's Warranties. I represent that my driver's license and the driver's license of any authorized driver has not been revoked or suspended within the last 5 years. I promise that I have given a true Amount Owed for any vehicle traded in. If the correct Prior Credit or Lease Balance is more than the amount shown in Section 4.B, I agree to pay you the excess amount upon demand. Personal Property. Lessor shall not be responsible at any time for any personal property in the Vehicle. Escheatment. If for any reason you need to escheat any of my funds to an unclaimed funds department, you may retain such fee as is allowable per state law.

41. ARBITRATION CLAUSE

PLEASE REVIEW - IMPORTANT - AFFECTS MY LEGAL RIGHTS

NOTICE: Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial. If a dispute is arbitrated, I will give up my right to participate as a class representative or class member on any class claim I may have against you including any right to class arbitration or any consolidation of individual arbitrations. Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights you and I would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between me and you or your employees, agents, successors or assigns, which arise out of or relate to my credit application, lease, purchase or condition of this Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action or other mass action. I expressly waive any right I may have to arbitrate a class action. I may choose the following arbitration organization and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.adrforum.com), or any organization that I may choose subject to your approval. I may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which I reside unless the Lessor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Lease was executed. The arbitrator shall be empowered as permitted under the Rules of the National Arbitration Forum to award equitable relief as well as legal relief, to provide all temporary and/or provisional remedies and to enter equitable orders that will be binding upon the parties. Any award or dispositive order of the arbitrator may be entered as a judgment in any court having jurisdiction. We agree that either you or I may, without objection, request an expedited hearing under the applicable rules.

You will advance my filing, administration, service or case management fee and my arbitrator or hearing fee all up to a maximum of $1500, which may be reimbursed by decision of the arbitrator at the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this clause, then the provisions of this clause shall control. The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration; however, the governing law as to the substantive issues of the Lease and Vehicle shall be the law of the state in which this Lease was executed.

You and I may retain any rights to self-help remedies, such as repossession. Neither you nor I waive the right to arbitrate by using self-help remedies or filing suit. Any court having jurisdiction may enter judgment on the arbitrator's award. This clause shall survive any termination, payoff or transfer of this Lease. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

Notwithstanding any other provision for notice contained in the Lease, any arbitration claim or other notice provided under the rules of the arbitration administrator will be given to you at the following address: if my claim is against the Lessor, I agree that notice of my claim will be given to the Lessor at the address specified in Section 1 of this Lease. If my claim is against the Assignee (designated in Section 2 of this Lease), I agree that notice of my claim will be given at 5550 Britton Parkway, Hilliard, OH 43026. If my claim is against both Lessor and Assignee, I agree that both Lessor and Assignee will be notified of my claim at the addresses indicated herein.

**From:**        GEICO Claims
**To:**          skiffg@outlook.com
**Subject:**     An update on your claim
**Date:**        Saturday, August 5, 2017 4:56:00 AM

Your vehicle damage payment                    View this email in your browser

GEICO Logo                                          Gregory Skiff
                                Your Claim Number: 0450381100101038

## We've issued payment for your vehicle damage

Details about the payment we recently issued are available online when you log in to your claim.

**VIEW MY PAYMENTS**

Use claims.geico.com to check your claim status, fill out any forms, upload documents, contact us, and much more.

Sincerely,

Your GEICO Claims Team

Do not reply to this email. Information emailed in response to this message will not become part of your claim file; submit your inquiries to contact us.

This email was sent to you at the following email address: skiffg@outlook.com

**Message ID: CLM-90**



Government Employees Insurance Company | GEICO General Insurance Company |
GEICO Indemnity Company | GEICO Casualty Company | GEICO Advantage Insurance
Company | GEICO Choice Insurance Company |GEICO Secure Insurance Company |
GEICO County Mutual Insurance Company | Colonial County Mutual Insurance Company
One GEICO Plaza, Washington, D.C. 20076

1/8/2018                                                                              Payment

GEICO

## Payment Details

| | |
|---|---|
| Issue Date: | 08/05/2017 |

| | |
|---|---|
| Paid To: | Bmw Financial Services |
| | WBA3B9G52FNR93426 |
| | 4002102215 |

| | |
|---|---|
| Check Number: | 190170595 |

| | |
|---|---|
| Amount: | $32,085.00 |

| | |
|---|---|
| Mail To: | Bmw Financial Services Attn Insurance Loss |
| | *5550 Britton Pkwy* |
| | *Hilliard, OH 43026* |

| | |
|---|---|
| Comments: | ERS - Comprehensive |
| | Mail title to GEICO STK # |
| | 20270738 700 Federal Blvd |
| | Carteret NJ 07008 |

## Communication

› Send a Message

› My Information and Text Message Enrollment

› Upload a Document or Photo

1/8/2018                                    Payment

## Resource Center

› <u>About the Claims Process</u>

› <u>How an Accident Affects My Rate</u>

› <u>Insurance Terms</u>

› <u>Reporting a Claim Online</u>

› <u>About GEICO Auto Repair Xpress®</u>

## Frequently Asked Questions

› <u>What do I do now that I received the vehicle damage payment?</u>

› <u>Can I get payment for damage and go to a different shop?</u>

› <u>I have my damage estimate. When will I receive payment and how soon will I get my check once it is issued?</u>

› <u>See More FAQs</u>

Legal                           Feedback

# BMW Financial Services

7017 0660 0001 0995 0003

August 14, 2017

Gregory Skiff
28 Marlin Dr
Whippany, NJ 07981-1279

| Reference | 40021022115 / 2015 BMW 335i xDrive Sedan SA / WBA3B9G52FNR93426 |
| Subject | Insurance Settlement Invoice |

Dear Mr Skiff:

A total loss payoff of $32,085.00 was received from Geico as settlement on your recent claim. The Total Loss Protection section of your lease agreement provides total loss protection in the event of a shortage between your account payoff and the total loss payoff from insurance proceeds. This protection is provided only if you have maintained the Vehicle Insurance as outlined in the Insurance, Maintenance & Operation section of your lease agreement. The shortage between your account payoff and the total loss payoff from the insurance proceeds is outlined below:

| | |
|---|---|
| Account payoff | $45,720.96 |
| Less total loss payoff from insurance | $32,085.00 |
| Shortage amount | $13,635.96 |

The Insurance Early Termination section of your lease agreement reads as follows: "*If the Vehicle has been stolen or destroyed, and if you have maintained the Vehicle Insurance required by this Lease, you will have to pay the Total Loss Payoff which is: (a) the proceeds of the Vehicle Insurance; (b) the deductible under the Vehicle Insurance policy; (c) unpaid Monthly Payments due; and (d) official fees or taxes assessed or billed in connection with this Lease, and any other charges to satisfy your obligations under this Lease.*" As a result, you are contractually responsible for the following:

| Items not covered by Total Loss Protection | |
|---|---|
| Unpaid monthly payments | $594.00 |
| Unpaid late charges | $29.70 |
| Excess Miles (15,486 miles at $0.20 per mile) | $3,097.20 |
| Deductible | $500.00 |
| Total amount not covered by total loss protection | $4,220.90 |
| | |
| Less security deposit | -0.00 |
| Total amount due | $4,220.90 |

**Company**
BMW Financial
Services NA, LLC

BMW Group Company

**Mailing Address**
5550 Britton Parkway
Hilliard OH 43026-7456

**Telephone**
(800) 366-3939

**Fax**
(800) 820-4269

**Internet**
bmwusa.com

# BMW Financial Services

Subject   Insurance Settlement Invoice - 4002102215
Date   August 14, 2017
Page   2 - 4002102215

Payment of $4,220.90 is required within 30 days of the receipt of this letter to close your account with BMW Financial Services. Please direct your payment (including your account number in the memo section) to:

BMW Financial Services
5550 Britton Parkway
Hilliard, OH 43026-7456

We are committed to providing you with the highest level of service. If you have any questions, please contact us at (800) 398-3939, Monday through Friday, from 9:00 a.m. to 6:00 p.m., or by mail at either address listed on this letter.

Yours sincerely,

Ryan Holdren
Insurance Team Leader
BMW Financial Services NA, LLC



CERMELE & WOOD LLP

<div align="right">
Gregory J. Skiff, Counsel<br>
greg@cw.legal
</div>

October 18, 2017

***Via First Class Mail***

BMW Financial Services
PO Box 3608
Dublin, Ohio 43016
ATTN: Customer Correspondence

> **Re:** ***Reference #4002102215 / 2015 BMW 335i xDrive Sedan SA***
> ***VIN #WBA3B9G52FNR93426***

Dear Sir/Madam:

I write in response to the letter dated August 14, 2017, which was improperly sent to my parents' address at 28 Marlin Drive, Whippany, NJ. My current address has long been entered in my profile on BMWUSA.com. In any event, I received a call on September 19, 2017 from a BMW Financial Services ("**BMW**", "**you**" or "**your**") representative, referencing your August 14 letter and a purported outstanding balance of $4,220.90 on my account (the "**Purported Balance**"). For the below reasons, I hereby reject the Purported Balance and contend that at most, I owe BMW the sum of $500 (*i.e.*, the deductible under my Insurance Policy with GEICO).

### A.  Unpaid Monthly Payments and Late Charges

On July 7, 2017, the above vehicle was destroyed. A couple of weeks later, GEICO declared the vehicle a total loss. I do not owe the alleged unpaid monthly payment of $594.00 and assessed late charge of $29.70. Indeed, your records, including, without limitation, all recorded telephone conversations, indicate that a representative from BMW contacted me on August 11 and represented that GEICO had remitted the total loss payoff and that the balance on my account was "$0." Accordingly, either BMW misinformed GEICO as to the correct payoff amount and, therefore, GEICO owes an additional $594.00 or, said amount is covered under Section 28 of the Lease, entitled, "'Gap Amount' Waiver".

### B.  Excess Miles

Your August 14 letter references purported language from an "Insurance Early Termination section" of the BMW Financial Services Motor Vehicle Lease Agreement (Closed End) – New Jersey dated April 27, 2015 (the "**Lease**"). An exhaustive review of the Lease, however, reveals

BMW Financial Services
October 18, 2017
Page 2 of 2

that no such language or section exists.  Rather, Section 27 of the Lease indicates that in the event of total loss my liability under the Lease is calculated under Section 28 thereof.

Section 28 states in pertinent part that if "the Vehicle is damaged, stolen or destroyed and considered a total loss under my insurance coverage, I will not be obligated to pay you the gap amount (the difference between the Adjusted Lease Balance and the actual cash value of the Vehicle as of the date of loss)," but that "I will be obligated to pay you:  (1) any and all amounts due and owing needed to satisfy my obligations under this Lease (including past due Monthly Payments and any official fees and taxes assessed or billed in connection with this Lease and the Vehicle); plus (2) any amounts (including Monthly Payments) that become due pending receipt of the insurance proceeds, plus (3) the deductible amount under my insurance policy, plus (4) any amounts deducted from the actual cash value of the Vehicle by the insurance carrier."  Accordingly, as the purported "Excessive Wear and Use" charge is not included in the listed obligations contained in Section 28, your attempt to assess this charge is wholly without merit.

## C. **Deductible**

I am in the process of determining whether I owe the $500 deductible to GEICO or whether it is owed directly to BMW.  In the event, GEICO directs that I pay this amount to BMW, I will promptly remit payment less any security deposit monies paid at Lease signing.

Based on the foregoing, I do not owe BMW in excess of $500 and it is quite possible that I do not owe anything at all.  Please contact me at 201.787.8701 at your earliest convenience to discuss.

Respectfully submitted,

Gregory J. Skiff

# BMW Financial Services



November 2, 2017

Mr. Gregory J Skiff
2 Westchester Park Dr Suite 110
White Plains NY 10604

Reference   4002102215 / 2015 BMW 335i xDrive Sedan SA
Subject   Remaining balance

Dear Mr. Skiff:

Thank you for contacting BMW Financial Services regarding the remaining balance for the above referenced account. We hope the following information and explanation will answer the issues addressed in your letter.

You are responsible for the balance of $4,220.90 on your account. Pursuant to your Motor Vehicle Lease Agreement (Lease Agreement), you are required to continue making monthly payments until we have received your insurance company's payment. We received the payment from Geico on August 10, 2017. There was a payment of $594.00 due on July 27, 2017 for which you were responsible, as well as the late charge of $29.70 associated with that payment due date. Additionally, you are obligated to pay any and all amounts due and owing needed to satisfy your obligations under the Lease Agreement, including official fees billed. According to Section 11 of your Lease Agreement, you will be billed $0.20 per mile for any mileage over 36,411; your mileage was 51,897, which leaves a balance for over mileage of $3,097.20. The GAP will also not cover your $500.00 deductible, which reduced the payment Geico sent. We have enclosed a copy of your Lease Agreement for your review.

If you have any questions, please contact us at (800) 398-3939, Monday through Friday, from 9:00 a.m. to 6:00 p.m. ET, or by mail at either address listed on this letter.

Yours sincerely,

Jered Shaffer
Recovery Specialist
BMW Financial Services NA, LLC

enclosure:     Lease Agreement

**Company**
BMW Financial
Services NA, LLC

BMW Group Company

**Mailing Address**
PO Box 3607
Dublin OH 43016-0305

**Office Address**
5550 Britton Parkway
Hilliard OH 43026-7456

**Telephone**
(800) 398-3939

**Fax**
(888) 235 2557

**Western Union**
**Quick Collect**
Code City
BMWOHIO

**Internet**
bmwusa.com

## BMW Financial Services
### Motor, Vehicle Lease Agreement (Closed End) - New Jersey          188140

**1. PARTIES**

| Lessor (Center) Name, Address and Telephone No. | Lessee and Co-Lessee Name and Address | Vehicle Garaging Address (if Different) |
|---|---|---|
| PAUL HILLER BMW<br>1515 RT 23 SOUTH<br>WAYNE, NJ 07470<br><br>9736966060 | GREGORY J SKIFF<br><br>94 BOWERS ST FL 3<br>JERSEY CITY NJ 07307 | Billing Address (if Different) |

**2. Agreement to Lease.** This Motor Vehicle Lease Agreement ("Lease") is entered into between the lessee and co-lessee ("Lessee") and the lessor ("Lessor") named above. Unless otherwise specified, "I," "me" and "my" refer to the Lessee and "you" and "your" refer to the Lessor or Lessor's assignee. "Vehicle" refers to the leased vehicle described below. "Assignee" refers to BMW Financial Services NA, LLC ("BMWFS") or, if this box is checked ☒ to Financial Services Vehicle Trust. BMWFS will administer this Lease on behalf of itself or any assignee. The consumer lease disclosures contained in this Lease are made on behalf of Lessor and its successors or assignees.

**3. Date of Lease, Lease Term and Scheduled Maturity Date.** This Lease is entered into on ___04/27/201__ for the scheduled Lease Term of ___36___ months with a Scheduled Maturity Date of ___04/27/18__.

**4. VEHICLE DESCRIPTION**

| A. ☐ Leased Vehicle<br>☐ New ☐ Demo<br>☐ Used | Model Year<br>2015 | Make & Model<br>BMW 335XI | VIN<br>N8A3B9652FNR93426 | Odometer<br>411 | Primary ☒ Personal, Family or Household<br>☐ Business, Commercial or<br>Agricultural |
|---|---|---|---|---|---|

If the odometer reads in excess of 1,000 miles, the prior use of the Vehicle was:
☐ Personal/Family   ☐ Demonstrator   ☐ Livery   Unknown   Transmission: ☒ Auto   Brakes: ☒ Power   Steering: ☒ Power   ☐ A/C   No. of Cylinders ___6___
☐ Police   ☐ Prior Wreckage   ☐ Rental   ☐ Manual   ☐ Manual   ☐ Manual   ☒ Monroney MSRP $ 64485.00
☐ Telephone   ☐ CD Player                                    _____(specify)_____   N/A   _____(specify)_____   N/A

| B. Trade-In | Model Year | Make | Model | Agreed Upon Value | Prior Credit or Lease Balance | Net Trade-In Value<br>N/A |
|---|---|---|---|---|---|---|

| **5. AMOUNT DUE AT LEASE SIGNING OR DELIVERY** (itemized in Section 9) | **6. MONTHLY PAYMENTS** | **7. OTHER CHARGES** (not part of my monthly payment) | **8. TOTAL OF PAYMENTS** (the amount I will have paid by the end of the Lease Term) |
|---|---|---|---|
| $ 3822.79 | My first monthly payment of $ 594.00 is due on 04/27/ followed by 35 payments of $ 594.00 due on the 27TH day of each month. The total of my monthly payments is $ 21384.00 | A. Disposition Fee (if I do not purchase the Vehicle) $ 350<br>B. N/A    $ N/A<br><br>TOTAL    $ 350.00 | $ 24962.79 |

**9. AMOUNT DUE AT LEASE SIGNING OR DELIVERY**

A. Amount Due at Lease Signing or Delivery
1. Capitalized Cost Reduction ......... $ 0.00
2. First Monthly Payment ............... $ 594.00
3. Refundable Security Deposit ........ $ N/A
4. Initial Title Fee .................... $ N/A
5. Initial Registration Fees ........... $ 323.30
6. Initial License Fees ................ $ N/A
7. Sales/Use Tax ....................... $ 1573.45
8. Acquisition Fee (if not capitalized) $ 795.00
9. Sales Tax on Capitalized Cost Reduction $ 0.00
10. Supp. Title Fee .................... $ N/A
11. DOC FEE ............................ $ 238.93
12. NJ TIRE FEE ........................ $ 299.00
13. .................................... $ 6.00
TOTAL ................................... $ 3822.79

B. How the Amount Due at Lease Signing or Delivery Will Be Paid
1. Net Trade-In Allowance .............. $ 0.00
2. Rebates and Noncash Credits ........ $ N/A
3. Amount to be Paid in Cash .......... $ 3822.79
TOTAL ................................... $ 3822.79

**10. HOW MONTHLY PAYMENTS IS DETERMINED AS SHOWN BELOW**

A. Gross Capitalized Cost. The agreed upon value of the Vehicle ($ 58008.41) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance) (See Section 13 for an itemization of this amount) .......................... = $ 58008.41

B. Capitalized Cost Reduction. The amount of any net trade-in allowance, rebate, noncash credit, or cash I pay that reduces the Gross Capitalized Cost. .......................... - $ 0.00

C. Adjusted Capitalized Cost. The amount used in calculating my Base Monthly Payment. .......................... = $ 58008.41

D. Residual Value. The value of the Vehicle at the end of the Lease used in calculating my Base Monthly Payment. .......................... - $ 41270.40

E. Depreciation and any Amortized Amounts. The amount charged for the Vehicle's decline in value through normal use and/or for other items paid over the Lease Term. .......................... = $ 16738.01

F. Rent Charge. The amount charged in addition to the Depreciation and any Amortized Amounts. .......................... + $ 4645.99

G. Total of Base Monthly Payments. The Depreciation and any Amortized Amounts plus the Rent Charge. .......................... = $ 21384.00

H. Lease Payments. The number of payments in my Lease. .......................... ÷ 36

I. Base Monthly Payment. .......................... = $ 594.00

J. Monthly Sales/Use Tax. .......................... + $ N/A

K. N/A .......................... + $ N/A

L. Total Monthly Payment. .......................... = $ 594.00

**Early Termination.** I may have to pay a substantial charge if I end the Lease early. The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.

**11. Excessive Wear and Use.** I may be charged for excessive wear based on your standards for normal use and for mileage in excess of total miles over the scheduled Lease Term of 36,000 miles, at the rate of 20 cents per mile.

**12. Purchase Option at End of Lease Term.** I have an option to purchase the Vehicle ("as is") at the Scheduled Termination of the Lease for the Residual Value of $ 41270.40. The purchase option price does not include official taxes, such as those for taxes, title, registration and license/tags. See Section 30 for more information.

**Other Important Terms.** See the front and back of this Lease for additional information on early termination, purchase options, and maintenance responsibilities, warranties, default charges, insurance, and any security interest, if applicable.

**13. ITEMIZATION OF GROSS CAPITALIZED COST**

| | | | | |
|---|---|---|---|---|
| A. Agreed Upon Value of Vehicle | $ 58008.41 | H. Extended Warranty | $ N/A | |
| B. Initial Title, License & Registration Fees | $ N/A | I. Prior Credit or Lease Balance* | $ N/A | |
| C. Sales/Use Tax | $ N/A | J. Acquisition Fee | $ N/A | |
| D. Federal Luxury Tax | $ N/A | K. Supp. Title Fee | $ N/A | |
| E. Sales Tax on Capitalized Cost Reduction | $ N/A | L. Other | $ N/A | |
| F. Maintenance Agreement | $ N/A | M. Other | $ N/A | |
| G. Mechanical Breakdown Protection | $ N/A | TOTAL | $ 58008.41 | |
| | | *Leave blank unless Lessor has paid prior credit or lease balance. | | |

**14. ESTIMATED OFFICIAL FEES AND TAXES**

$ 2134.79   This is an estimate of the total amount I agree to pay for official and license fees, registration, title and taxes (including personal property

MRS-DC-000563-18   01/16/2018   Pg 30 of 38 Trans ID: SCP2018149029

## 18. ESTIMATED OFFICIAL FEES AND TAXES

$ 2134.79    This is an estimate of the total amount I agree to pay for official and license fees, registration, title and taxes (including personal property taxes) over the Lease Term (including any extensions of the Lease Term, whether included in my Monthly Payment, Amount Due at Lease Signing or Delivery, or separately billed to you by me). Fees and Taxes may be higher or lower, depending on the tax rates in effect or the value of the Vehicle at the time a fee or tax is assessed. This estimate is based on my Garaging Address and may increase if I move or if tax rates change. For some of these items, you may invoice me after the taxing authority has billed me, sometimes after the Lease terminates.

## 19. OPTIONAL PRODUCTS AND SERVICES

I am not required to buy any of the optional products and services listed below. These products and/or services will not be provided unless I check the appropriate box. If I am including any products and services in the Lease, Lessor and I am accepted by the provider. Because these products and/or services are not provided by the Lessor, I understand that I must arrange all related matters, including questions, through the listed Provider. By initialing below, I agree that I have received and read and notice of the terms of the product or service and I want to obtain the product or service for the charge shown. A portion of the charge may be retained by Lessor (Dealer).

| | | Term (Months) | $ N/A Charge | Lessor/Co-Lessee Initials |
|---|---|---|---|---|
| ☐ Maintenance Agreement | N/A Provider | N/A Term (Months) | $ N/A Charge | Lessor/Co-Lessee Initials |
| ☐ Mechanical Breakdown Protection | N/A Provider | N/A Term (Months) | $ N/A Charge | Lessor/Co-Lessee Initials |
| ☐ | N/A Provider | N/A Term (Months) | $ N/A Charge | Lessor/Co-Lessee Initials |

Mileage Allowance/Refund.
Enter Mileage  35,000. I agree to the Mileage Allowance for the term of this Lease. My Total Single Payment and Residual Value for this Lease have been calculated, in part, by using the Mileage Allowance.

☐ If this box is checked, I have selected a High Mileage Allowance. I may receive a refund of $ N/A cents per unused mile for the unused miles below an N/A
mileage of N/A miles, unless (a) the Vehicle is destroyed or stolen, (b) I default or terminate this Lease early or (c) I purchase the Vehicle, or (d) the refund is less than $1.
Any refund will be reduced by any amount I owe under this Lease at the Scheduled Termination.

## 20. WARRANTIES

The Vehicle is subject to the following express warranties. If the Vehicle is new, the Vehicle is subject to the standard manufacturer's new vehicle warranty. The Vehicle is also covered by the following, if checked:
☐ N/A
☐ Remainder of the standard manufacturer's new vehicle warranty for a new vehicle.

UNLESS A LESSOR'S WARRANTY IS DISCLOSED ABOVE, LESSOR, TO THE EXTENT PERMITTED BY LAW, (1) MAKES NO WARRANTIES OR REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, AS TO THE VEHICLE OR ANY OF THE PARTS OR ACCESSORIES AND (2) MAKES NO WARRANTY OF THE MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE. I ACKNOWLEDGE THAT I AM LEASING THE VEHICLE FROM THE LESSOR "AS IS."

## 21. INSURANCE REQUIREMENTS

I agree to maintain the insurance coverage described in Section 20. I affirm that such insurance is in force on the date of this Lease. Attach other Lessor and its assignees as specified to my insurance against or company, and pay future insurance agents or companies, about my coverage for the Leased Vehicle.

Insurance Company   4224190570                        Coverage Verified (Center Employee Initials)
Policy No.   300-CROSSPOINT-PKWY-GETZVILLE-NY-14068   0009443080           Phone No.

All matters regarding insurance should be sent by e-mail to insuranceinfo@bmwofusa.com or faxed to 888-725-6481.

## 22. ADDITIONAL PROVISIONS/SIGNATURES

TOTAL COST OF LEASE. Assuming I do not default or buy the Vehicle under this Lease and that I exercise the Purchase Option at End of Lease Term, the Total Cost of this Lease is $ 56,058.10. This disclosure is required and calculated as outlined by New Jersey law. This amount is calculated by adding up the following amounts: (1) the Total Due at Lease Signing or Delivery (minus the First Monthly Payment and Refundable Security Deposit) plus (2) the Total of Monthly Payments plus (3) any amounts imposed on me at the end of the Lease Term and (4) the Residual Value (the Purchase Option price). Because the disclosure is based on certain assumptions and does not include all costs (such as insurance), my actual total cost may differ.

## 23. LESSEE AND LESSOR SIGNATURES

By signing below, I acknowledge that I:
• This Lease has been completely filled out;
• I have no ownership rights in the Vehicle unless and until I exercise any option to purchase the Vehicle;
• I have read both sides of this Lease carefully and agree to all of its terms; and
• I have received a completely filled in copy of this Lease.

NOTICE TO LESSEE: LESSEE AND LESSOR SHALL BE ENTITLED TO REVIEW THIS LEASE AGREEMENT FOR ONE BUSINESS DAY BEFORE SIGNING THE AGREEMENT.

Lessee Signature X _____                  Guarantor's Signature X _____
GREGORY J. SIEFE
By (Print Name & Title if Corporation)                       By (Print Name & Title if Corporation)

## 24. GUARANTY

I jointly and severally guarantee payment and performance of all promises contained in this Lease. Upon default, Lessor may proceed immediately against me with-
out proceeding against the Lessee. My guaranty will not be affected by any failure by Lessor to notify me of any settlement, extension, renewal or modification of this Lease,
whether or not by operation of law. I waive all rights to notices of every kind, including rights to demand or be presentment. I agree to pay all expenses (including reasonable
attorney's fees and legal expenses) incurred if you have to enforce this Guaranty.

Guarantor's Signature X _____

Name   N/A

Address

## 25. CO-LESSEE

By signing below, Lessee (1) accepts the terms, conditions and obligations of this Lease and (2) assigns all right, title and interest in the Vehicle and this Lease to
the Assignee listed in Section 2 above. This Lease, including all amounts to become due under it, and any guaranty are subject to the provisions of the Center Agreement
between Lessor and BMW FS.

Lessor Name   Paul Miller Bmw                           Signature of Authorized Representative _____

2000 FORM 98.NJ.5

## MY OBLIGATIONS DURING THIS LEASE

**21. Vehicle Use.** I agree not to use (or permit others to use) the Vehicle: (a) in any way that violates the law or the terms of my insurance policy or this Lease; (b) to transport goods or people for hire, lease or rental to others; (c) outside the state where it was first titled for more than 30 days without your prior written consent or (d) outside the United States, except for less than 30 days in Canada. I will not allow an unlicensed person to operate the Vehicle at any time, or allow any third party, other than my spouse, to operate the Vehicle without written permission from you. I will not physically change the Vehicle's body or interior in any way unless I first get your written consent.

**22. Vehicle Maintenance, Service, Repairs, and Reconditioning.** I agree to maintain, service, repair, and recondition the Vehicle during the Lease Term with new and genuine BMW manufacturer's original equipment replacement parts as recommended in the Vehicle owner's manual. I will keep complete maintenance records and return them with the Vehicle.

I am responsible for repairs of all collision, accident, and other physical damage that is not a result of normal wear and use. These repairs include, but are not limited to, those necessary to return the Vehicle to its pre-damage condition, including, but not limited to, repairing damage to exterior panels and components, structural components, vehicle safety systems such as airbag systems and seatbelts, and the Vehicle's interior. All repairs must be made with new and genuine manufacturer's original equipment replacement parts. I will discuss these requirements with my insurance company prior to signing my insurance agreement, damage repair estimates, or before authorizing any damage repair work. If I have not had the repairs made before the Vehicle is returned at or before the end of the scheduled Lease Term, I will pay the estimated cost of such repairs to restore the Vehicle to its pre-damage condition, even if the repairs are made after the Vehicle is returned.

If the Vehicle's odometer becomes inoperative or malfunctions, I agree to notify you and have the odometer repaired within 30 days. I agree not to make any alterations that decrease the Vehicle's value or usefulness or that violate the law. If I add non-standard equipment to the Vehicle, I will return it to original manufacturer specifications before the end of the Lease Term. If the non-standard equipment cannot be removed or modified, without decreasing the Vehicle's value or usefulness when the Vehicle is returned to you, the equipment will become your property, and I may be billed in accordance with Section 25 below. You may inspect the Vehicle at any reasonable time.

**NO PHYSICAL DAMAGE OR LIABILITY INSURANCE COVERAGE FOR BODILY INJURY OR PROPERTY DAMAGE CAUSED TO OTHERS IS INCLUDED IN THIS LEASE.**

**23. Required Insurance.** During the term of this Lease and until I return the Vehicle, I agree to maintain the following types and amounts of primary insurance: (a) personal liability for bodily injury or death to any one person for not less than $100,000 and for any one occurrence for not less than $300,000; (b) property damage liability for not less than $50,000; (c) comprehensive liability, including fire and theft, for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000; (d) collision liability for the Vehicle's actual value (payable in cash and not by a replacement vehicle) with a maximum deductible of $1,000. The coverage will name you as an additional insured and loss payee. I will provide you with at least 30 days advance notice of cancellation. You have the right to endorse any name on any insurance check or settlement you receive. You also have the right to speak to my insurance company about my insurance coverage.

Except to the extent required by the motor vehicle financial responsibility laws of the applicable state or otherwise by law, I acknowledge that you do not extend any of your motor vehicle financial responsibility or financial insurance coverage to me, any authorized additional driver(s), passengers or third parties through this Lease. I will automobile liability insurance or self insurance is available on any basis for me, additional authorized driver(s) or any other driver and do this insurance or self insurance satisfies the applicable state motor vehicle financial responsibility law, then you extend none of your motor vehicle financial responsibility. However, if I and any additional authorized driver(s) are in compliance with the terms and conditions of this Lease and if you are obligated to extend your motor vehicle financial responsibility to me, any additional authorized driver(s) or third parties, then your obligation is limited to the applicable state minimum financial responsibility amounts. Unless required by law, your financial responsibility shall not extend to any claim made by passenger while riding in or on or getting in or out of Vehicle. Your financial responsibility shall not extend to liability imposed or assumed by anyone under any worker's compensation act, plan or contract.

Except as required by law, you do not provide Personal Injury Protection, No Fault Benefits or Medical Payment Coverage (PIP) or Uninsured/Underinsured Motorist Protection (UM/UIM) through this Lease. If you are required by law to provide PIP and/or UM/UIM, I expressly select such protection in the minimum limits with maximum deductible and expressly waive and reject PIP and/or UM/UIM limits in excess of the minimum limits required by law.

**24. Registration, Titling, and Taxes.** I agree to pay registration, title, license, inspection fees and other official fees and taxes in connection with the Vehicle when due. You may, at your discretion, pay these fees or taxes to protect your interest in the Vehicle. If you pay such fees or taxes on my behalf, I agree to reimburse you when I am billed. If I fail to reimburse you within 60 days after I am billed, then I will pay you a monthly late charge, until the unpaid balance of the fees and taxes has been paid in full. The amount of each such late charge will not exceed 1.5% of the outstanding unpaid balance of the fees and taxes then due, or the maximum amount permitted by law, whichever is less. The remedies described in this Section 24 are in addition to any remedies you may have pursuant to Section 26.

If I move to another location during the Lease Term until becomes necessary for you, to correct any title or registration deficiencies, or to perfect your interest in the Vehicle, whether as a result of my failure to cooperate or other action or inaction on my part, I agree to pay you a $30 service charge in addition to the actual fees or taxes, unless prohibited by law, to process registration, title and license documents.

**25. Payments, Late Charge, Returned Payment Charge, Fines, and**

Traffic Tickets. If you do not receive my total Monthly Payment within 10 days after it is due, I agree to pay a late charge of $30, or 5% of the amount of the payment that is late, whichever is greater, but not to exceed any limit under applicable law. If any payment is returned to you unpaid for any reason, or if any electronic debit authorization is not paid, I agree to pay you a $30 service charge per item when I am billed.

If you receive notice of any third-party charges related to the Vehicle (including but not limited to fines, traffic tickets, parking tickets, toll violations, towing fees, storage fees, or repair bills), I will pay you a $30 service charge per item whether or not you pay such third-party charges. You may, at your discretion, pay these charges to protect your interest in the Vehicle. If you pay such charges on my behalf, I agree to reimburse you when I am billed. If I fail to reimburse you within 60 days after I am billed, then I will pay you a monthly late charge, until the unpaid balance of such third-party charges has been paid in full. The amount of each such late charge will not exceed 1.5% of the outstanding unpaid balance of the fees and taxes then due, or the maximum amount permitted by law, whichever is less. I further agree to pay you any and all costs you incur associated with my failure to pay any of these third-party tickets, including legal costs and reasonable attorneys' fees as allowed by applicable law. The remedies described in this Section 25 are in addition to any remedies you may have pursuant to Section 26.

**26. Default and Remedies.** I will be in default under this Lease if: (a) I fail to make a Monthly Payment when due; (b) I fail to maintain the required insurance; (c) I fail to return the Vehicle at the end of the Lease term (d) I fail to keep any of my promises under this Lease; (e) I abandon the Vehicle; (f) I or a guarantor become(s) insolvent or die(s); or (g) Any information in my credit application or a guarantor's credit application is false or misleading.

If I am in default, following any applicable statutory right to cure, you may do any or all of the following: (a) Terminate this Lease and my rights to possess and use the Vehicle; (b) Take possession of the Vehicle by any method permitted by law; (c) Pursue any other remedy permitted by law; (d) Dispose of any personal or other property in the Vehicle at the time of repossession if I do not reclaim it within 10 days; (e) Require that I pay the sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease except Excess Wear and Use and Excess Mileage charges; plus (3) the amount by which the Adjusted Lease Balance (explained in Section 30) exceeds the Realized Value of the Vehicle (Section 34); plus (4) all of your expenses for taking these actions, including, but not limited to expenses for repossession, transportation, storage, and/or sale of the Vehicle; plus (5) all fees and costs of collection, including reasonable attorneys' fees, court costs, interest, and other related expenses for all losses you incur in connection with my default of this Lease. Furthermore, if I do not pay those amounts when you ask, you may charge me interest at a rate not exceeding the highest lawful rate until I pay; (f) If the Vehicle has an electronic tracking device, I agree that you may use the device to find the Vehicle.

**27. Vehicle Loss or Damage.** I agree to immediately notify you if the Vehicle is damaged or destroyed in an accident, stolen, abandoned, or confiscated by a police or other governmental agency and subject to forfeiture. In that event, you reserve the right to terminate this Lease and my liability will either be: (a) calculated under Section 28 below, if I am in compliance with my insurance obligations; or (b) calculated under Section 26 above, if I am not in compliance with my insurance obligations. If the Vehicle is stolen or destroyed, another vehicle may be substituted in its place only if you agree to the substitution. You have no obligation to provide a substitution vehicle. If the Vehicle is damaged and you do not terminate this Lease because the Vehicle is reasonably repairable, I agree to make the repairs in accordance with Section 22 above at my expense.

**28. "Gap Amount" Waiver.** If I am in compliance with my insurance obligations under this Lease and the Vehicle is damaged, stolen or destroyed and considered a total loss under my insurance coverage, I will not be obligated to pay you the gap amount (the difference between the Adjusted Lease Balance and the actual cash value of the Vehicle as of the date of loss) if the claim for total loss is officially paid to you by my insurance company. However, I will be obligated to pay you: (1) any and all amounts due and owing needed to satisfy my obligations under this Lease (including past due Monthly Payments and any official fees and taxes assessed or billed in connection with this Lease and the Vehicle); plus (2) any amounts (including Monthly Payments) that become due pending receipt of the insurance proceeds, plus (3) the deductible amount under my insurance policy, plus (4) any amounts deducted from the actual cash value of the Vehicle by the insurance carrier. If as of the date of loss, I do not have a physical damage insurance policy that complies with the insurance requirements set forth in this Lease, no gap amount waiver applies and the amount of my liability will be determined as set forth in Section 26.

**29. Power of Attorney.** I appoint you, to the extent permitted by law, through your officer or employee, as my attorney-in-fact. My grant of this power of attorney is coupled with an interest, and is irrevocable until all obligations I owe under this Lease are paid in full. As my attorney-in-fact, you can sign on my behalf all Certificates of Ownership, Registration Cards, applications, affidavits, or any other documents required to register and properly perfect your interest in the Vehicle; transfer my entire interest in the Vehicle as part of a repossession, and assign and on my behalf in insurance matters relating to the Vehicle, including, but not limited to, the power to endorse insurance proceeds checks or drafts on my behalf, and cancel any Credit Insurance, Credit Disability, GAP Coverage, Extended Warranty, or other optional insurance financed under this Lease, and apply the refunded premium or cost to my outstanding balance if I am in default. Should an original power of attorney be necessary to accomplish any of the preceding, I agree to execute a separate identical power of attorney document and provide you with same.

## ENDING MY LEASE

**30. Purchase Option.** I have an option to purchase the Vehicle AS-IS, WHERE-IS. If I want to buy the Vehicle, I will notify you in advance and agree to complete any documents you require for the purchase. I also agree to re-register and re-title the Vehicle at my own expense in my name at the time I purchase it. If I fail to do so, you reserve the right to cancel the registration. At the Scheduled Termination of the Lease, the purchase price will be the Residual Value (Section 31.D). Prior to the end of the Lease Term, the purchase

and/or billed after the Lease terminates.

The Adjusted Lease Balance is determined at any given time by subtracting the scheduled Base Monthly Payments received through the early termination date from the Capitalized Cost and adding to the difference the cumulative Rent Charge received through the early termination date. The Rent Charge is calculated according to the "con-

purchase. If I fail to do so, you receive the right to cancel the registration. At the Scheduled Termination of the Lease, the purchase price will be the Residual Value (Section 15(D)). Prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (Section 33). In either case, I agree to also pay any other amounts due or outstanding under the Lease at the time of purchase such as any official fees, unpaid Monthly Payments or late charges.

**31. Vehicle Return.** If I do not purchase the Vehicle, I agree to return it to the place you specify with all parts and accessories and in good working order. Upon return, I agree to complete and sign an odometer disclosure statement and a vehicle inspection report, which may be used in determining any excess wear and use and/or excess mileage. If I do not return the Vehicle at the end of my Lease Term, I am in default and will continue to pay an amount equal to the Monthly Payment for each month until the time that I return the Vehicle. Payment of this amount does not give me the right to keep the Vehicle nor does it automatically extend this Lease.

**32. Scheduled Termination of the Lease.** Unless I terminate my Lease early or purchase the Vehicle, my Lease will terminate on the Scheduled Maturity Date, at which time, I agree to pay you: (a) a $350 Disposition Fee, plus (b) any unpaid Monthly Payments then due and other amounts needed to satisfy my obligations under this Lease, plus (c) any Excess Mileage and/or Excess Wear and Use charges (Section 11), plus (d) any official fees or taxes assessed or billed in connection with the Lease.

**33. Early Termination of the Lease.** I may terminate this Lease at any time by purchasing the Vehicle (Section 30) or by returning the Vehicle to a location selected by you, if I am in full compliance with the Lease and satisfy all of my Early Termination obligations. If I do not purchase the Vehicle, I may choose one of the following options to determine my Early Termination liability:

**Option A.** I agree to pay the sum of: (1) all remaining Monthly Payments; plus (2) any past due Monthly Payments; plus (3) any official fees and taxes assessed or billed in connection with the Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease; plus (4) any Excess Wear and Use and Mileage Charges; plus (5) a $350 Disposition Fee.

**Option B.** I agree to pay the sum of: (1) any past due Monthly Payments; plus (2) any official fees and taxes assessed or billed in connection with this Lease and the Vehicle and any other amounts needed to satisfy my obligations under this Lease; plus (3) any Excess Wear and Use and Excess Mileage charges; plus (4) a $350 Disposition Fee; plus (5) an amount by which the Adjusted Lease Balance (explained below) exceeds the Realized Value of the Vehicle (Section 34). However, should my Early Termination liability calculated under this Option exceed what I would have owed had I selected Option A, you will waive the difference and my liability will be capped at Option A.

Under either option, you may apply some or all of my Security Deposit to what I owe and I will remain liable for personal property taxes that may be assessed.

ADDITIONAL INFORMATION

**36. Indemnification.** I agree to indemnify, defend and hold you harmless from all claims, liabilities, suits, losses, damages and expenses (including attorney's fees and court costs) arising out of the condition, maintenance, use, ownership or operation of the Vehicle, including claims made under the strict liability doctrine.

**37. Refundable Security Deposit.** You may use some or all of my Security Deposit to pay any amount I owe under the Lease or at the end of my Lease Term, or upon early termination of the Lease. I will not earn any interest on my Security Deposit. After I have paid all my obligations under the Lease, you will refund to me any part of my Security Deposit that is not used to pay what I owe you.

**38. Assignment.** You may assign your interests under the Lease without my consent. I MAY NOT TRANSFER OR SUBLEASE THIS VEHICLE TO A THIRD PARTY OR ASSIGN THE LEASE OR ANY RIGHTS UNDER IT WITHOUT YOUR PRIOR WRITTEN APPROVAL, WHICH YOU MAY WITHHOLD IN YOUR SOLE JUDGMENT.

**39. Notices.** All correspondence and notices will be sent to me at my Billing Address shown on this Lease unless I give you a different address in writing.

**40. Other Terms.** Waiver. You may waive or delay enforcement of your rights under this Lease without affecting your rights on future defaults. Severability. Any part of this Lease that is not enforceable shall not affect the validity of the remainder of this Lease. Joint Liability. If more than one Lessee signs this Lease, each Lessee shall be jointly and severally liable for all obligations under this Lease. Choice of Law. Except as may otherwise be provided by law, this Lease will be subject to the laws of the state where I sign it. In the event that both parties agree not to arbitrate in accordance with Section 41 below, any disputes brought in a court located in the state of Lessor's place of business. Entire Agreement. This Lease describes all agreements between us with respect to the Lease of the Vehicle. All prior agreements, whether oral or in writing, are superseded. Maintaining Payments. I may not change or stop any Monthly Payments for any reason, even if I do not receive an invoice, and even if the Vehicle is stolen, destroyed, seized by the government or the court, experiences mechanical problems, or does not satisfactorily perform. Lessee's Warranties. I represent that my driver's license and the driver's license of any authorized driver has not been revoked or suspended within the last 3 years. I promise that I have given a true Amount Owed for any vehicle trade-in. If I commit Prior Credit or Lease Balance is more than the amount shown in Section 4.B, I agree to pay you the excess amount upon demand. Personal Property. Lessor shall not be responsible at any time for any personal property in the Vehicle. Escheatment. If for any reason you are unable to escheat any of my funds to an unclaimed funds department, you may retain such fees as allowable per state law.

**41. ARBITRATION CLAUSE**

**PLEASE REVIEW – IMPORTANT – AFFECTS MY LEGAL RIGHTS**

**NOTICE:** Either you or I may choose to have any dispute between us decided by arbitration and not in a court or by jury trial. If a dispute is arbitrated, I will give up my right to participate as a class representative or class member on any class claim I may have against you including any right to class arbitration or any consolidation of individual arbitrations. Discovery and rights to appeal in arbitration are generally more limited than in a lawsuit, and other rights that you and I would have in court may not be available in arbitration.

Any claim or dispute, whether in contract, tort, statute or otherwise (including the interpretation and scope of this clause, and the arbitrability of the claim or dispute), between me and you or your employees, agents, successors

---

difference, the cumulative Rent Charge, received through the early termination date. The Rent Charge is calculated according to the "constant yield method". Under the constant yield method, each month the rent charge is earned by multiplying the constant rate implicit in the Lease times the Adjusted Lease Balance. The Rent Charge calculations are based on the assumption that Lessor will receive the Monthly Payments on the exact due dates.

**34. Realized Value of the Vehicle.** For the purpose of calculating my Early Termination liability (Section 33), the Realized Value of the Vehicle is (a) the price you receive for the Vehicle upon disposition in a commercially reasonable manner or (b) a price agreed to by you and me in a separate writing, if the Vehicle is a total loss as set forth in Section 27 above, the amount of any deductible and the proceeds of the settlement of the insurance claim you receive are the "Realized Value." The Realized Value may also be determined by an appraisal of the wholesale value of the Vehicle, which I may obtain at my own expense from a professional, independent appraiser agreeable to both of us. If I obtain such an appraisal within 10 days after the Vehicle is returned to you, the appraisal will be the final and binding Realized Value.

**35. Excessive Wear and Use.** I agree to pay you the costs of all repairs to the Vehicle that are not the result of normal wear and use, whether or not you actually repair the Vehicle. Excessive wear and use includes, but is not limited to:
 (a) inoperative electrical or mechanical parts;
 (b) dented, scratched, chipped, rusted, pitted, broken or mismatched body parts, paint, vehicle identification items, trim or grill parts;
 (c) non-functioning, scratched, cracked, pitted or broken glass or lights;
 (d) missing equipment, parts, accessories or adornments;
 (e) torn, damaged, burned, or stained interior;
 (f) repair of any damage that makes the Vehicle unlawful or unsafe to drive;
 (g) damage due to installation or removal of non-manufacturer, aftermarket of replacement parts;
 (h) damage (including damage to the engine) due to failure to maintain the Vehicle in accordance with Section 22; or
 (i) tires with tread depth of less than 1/8" remaining at the shallowest point, and/or tires that are not all of the same grade, quality or quantity as those delivered with the Vehicle.

I may obtain at the end of the lease term, at my expense, a professional appraisal of the amount required to repair or replace parts or the amount which any excessive wear and use reduces the value of the Vehicle. This professional appraisal shall be performed by an independent third party agreed to by you and me, which appraisal shall be final and binding on us. If I fail to pay any excess wear and use, excess mileage or other fees and charges within thirty days of the date indicated on my end of lease bill, I will pay you interest on the unpaid balance of these charges at the rate of 18 percent per annum, if permitted by law, or the maximum rate permitted, until paid in full.

I agree to pay state and local taxes that may be due on amounts owed for lease end charges, including but not limited to excess wear and use and excess mileage fees.

or assigns, which arise out of or relate to my credit application, lease, purchase or condition of the Vehicle, this Lease or any resulting transaction or relationship (including any such relationship with third parties who do not sign this Lease) shall, at your or my election, be resolved by neutral, binding arbitration and not by a court action. Any claim or dispute is to be arbitrated by a single arbitrator on an individual basis and not as a class action or other class action. I expressly waive any right I may have to arbitrate a class action. I may choose the following arbitration organization and its applicable rules: the National Arbitration Forum, Box 50191, Minneapolis, MN 55405-0191 (www.adrforum.com), or any organization that I may choose subject to your approval, may get a copy of the rules of these organizations by contacting the arbitration organization or visiting its website.

Arbitrators shall be attorneys or retired judges and shall be selected pursuant to the applicable rules. The arbitrator shall apply governing substantive law in making an award. The arbitration hearing shall be conducted in the federal district in which I reside unless the Lessor is a party to the claim or dispute, in which case the hearing will be held in the federal district where this Lease was executed. The arbitrator shall be empowered to permit limited discovery under the National Arbitration Forum to award equitable relief as well as legal relief, to provide all temporary and/or provisional remedies and to enter equitable orders that will be binding upon the parties. Any award or disposition by order of the arbitrator may be entered as a judgment in any court having jurisdiction. We agree that either you or I may, without objection, request an expedited hearing under the applicable rules.

You will advance my filing, administration, service or case management fee and my arbitrator or hearing fee all up to a maximum of $1500, which may be reimbursed by decision of the arbitrator or the arbitrator's discretion. Each party shall be responsible for its own attorney, expert and other fees, unless awarded by the arbitrator under applicable law. If the chosen arbitration organization's rules conflict with this clause, then the provisions of this clause shall control. The arbitrator's award shall be final and binding for all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting a new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrator of a fair apportionment of costs. Any arbitration under this Arbitration Clause shall be governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration; however, the governing law as to the substantive issues of the Lease and Vehicle shall be the law of the state in which this Lease was executed.

You and I may retain any rights to self-help remedies, such as repossession. Neither you nor I waive the right to arbitrate by using self-help remedies before suing. Any court having jurisdiction may enter judgment on the arbitrator's award. This clause shall survive any termination, payoff or transfer of this Lease. If any part of this Arbitration Clause, other than waivers of class action rights, is deemed or found to be unenforceable for any reason, the remainder shall remain enforceable.

Notwithstanding any other provision for notice contained in the Lease, any arbitration claim or other notice provided under the rules of the arbitration administrator will be given to you at the following address: if my claim is against the Lessor, I agree that notice of my claim will be given to the Lessor at the address specified in Section 1 of this Lease. If my claim is against the Assignee (designated in Section 2 of this Lease), I agree that notice of my claim will be given at 5550 Britton Parkway, Hilliard, OH 43026. If my claim is against both Lessor and Assignee, I agree that both Lessor and Assignee will be notified of my claim at the addresses indicated herein.



CERMELE & WOOD LLP

Gregory J. Skiff, Counsel
greg@cw.legal

November 8, 2017

***Via First Class Mail***

BMW Financial Services NA, LLC
PO Box 3607
Dublin, Ohio 43016-0305
ATTN: Jered Shaffer

> Re: *Reference #4002102215 / 2015 BMW 335i xDrive Sedan SA*
> *VIN #WBA3B9G52FNR93426*

Dear Mr. Shaffer:

I have received your letter dated November 2, 2017. This letter shall serve as my final good-faith attempt to resolve this matter.

As you know, the subject lease agreement was terminated pursuant to Section 27 thereof. Accordingly, my liability is limited to the items expressly set forth in Section 28 and "Excessive Wear and Use" is not one of them. Indeed, where BMW intended to include "Excessive Wear and Use" in an early-termination calculation provision, it did so. (*See, e.g.*, Lease §33.)

Your suggestion that "Excessive Wear and Use" constitutes an amount "due and owing needed to satisfy [my] obligations under the Lease," is sorely misplaced. "Excessive Wear and Use" is only assessed after "the scheduled Lease Term", which was not set to occur until May 2018. (*See* Lease §11.) Amounts "due and owing" under Section 28 include only those amounts due as of the "date of loss" / termination under Section 27. Here, the "scheduled Lease Term" did not and could not reach the "Scheduled Maturity Date" prior to the date of loss/termination, and thus, a payment obligation pursuant to Section 11 did not and could not arise.

Notwithstanding the foregoing, in a final good-faith attempt to resolve this matter, I will agree to pay $700 in full satisfaction of the alleged debt and in exchange for a release of all claims. Nothing contained in this letter shall be deemed a waiver of any of my rights or remedies.

Thank you.

Very truly yours,

Gregory J. Skiff

---

Oaks, PA 19456
Return Mail Only - No Correspondence or Payments

Central Credit Services LLC
9550 Regency Square Blvd Suite 500A
Jacksonville, FL 32225
(888) 500-4801

OFFICE HOURS (EST):
8AM-9PM MONDAY - THURSDAY
8AM-5PM FRIDAY

MR. GREGORY J SKIFF
Y8 FARMHOUSE LN
MORRISTOWN NJ 07960-3018

Central Credit #: 10045119
December 18, 2017

Current Creditor:  BMW FINANCIAL SERVICES NA, LLC
Account:       4002102215
Balance:       $4,220.90

This claim has been sent to us for collection.  If you are unable to remit the balance of your account, we kindly ask that you contact our office so we can assist you in the repayment of your account.  The preceding information does not affect your rights set forth below.

Unless you notify this office within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid.  If you notify this office in writing within 30 days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification.  If you request this office in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

Sincerely,

Central Credit Services

This communication is from a debt collector.  This is an attempt to collect a debt and any information obtained shall be used for that purpose. Calls to or from this company may be monitored or recorded for quality assurance.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Please Detach And Return In The Enclosed Envelope With Your Payment

Date: December 18, 2017
Central Credit #: 10045119
Balance: $4,220.90

Central Credit Services LLC
9550 Regency Square Blvd Suite 500A
Jacksonville, FL  32225
(888) 500-4801

Amount Enclosed: $_____

OFFICE HOURS (EST):8AM-9PM MONDAY - THURSDAY, AND 8AM-5PM FRIDAY

☐ Check here if your address or phone numbers have changed
  Please update changes on reverse side.

Make Payment To:

MR. GREGORY J SKIFF
Y8 FARMHOUSE LN
MORRISTOWN NJ 07960-3018

Central Credit Services LLC
PO BOX 15118
Jacksonville, FL 32239-5118

102068-00100-481

 CERMELE & WOOD LLP

Gregory J. Skiff, Counsel
greg@cw.legal

January 8, 2018

***Via Certified Mail/RRR***

Central Credit Services LLC
9550 Regency Square Blvd., Suite 500A
Jacksonville, Florida 32225

> Re: *Account #4002102215*
> *Disputed Balance Amount: $4,220.90*

Sir/Madam:

I am in receipt of your letter dated December 18, 2017, contending that there exists a balance on my account with BMW Financial Services NA, LLC ("**BMW**") in the amount of $4,220.90. Pursuant to multiple direct written and recorded verbal communications, BMW is fully aware that I categorically reject said contention.

Having not received a response to my good-faith letter dated November 8, 2017 and, instead, receiving your notice dated December 18, 2017, I can only assume that BMW has rejected my best and final offer to settle this matter in an amicable manner. Accordingly, I have no choice but to take appropriate legal action under the terms of the subject lease agreement. A true and correct copy of my November 8 letter is annexed hereto for your convenience.

Please be guided accordingly.

Very truly yours,

**CERMELE & WOOD LLP**

Gregory J. Skiff

Enc.
cc:   Jered Shaffer (via certified mail/rrr)



| Court's Address and Phone Number:<br>MORRIS Special Civil Part<br>WASHINGTON STREETS<br>MORRISTOWN, NJ 07963-0910<br><br>973-656-4125 | **Superior Court of New Jersey**<br>**Law Division, Special Civil Part**<br>**MORRIS** County<br>Docket No: **MRS-DC-000563-18**<br>**Civil Action**<br>**CONTRACT DISPUTE** |
|---|---|

## YOU ARE BEING SUED!

| **Person or Business Suing You (*Plaintiff*)**<br>Gregory J Skiff<br>See Page 3 for additional Plaintiff list<br><br>**Plaintiff's Attorney Information** | **Person or Business Being Sued (*Defendant*)**<br>BMW Financial Services NA, LLC<br>See Page 3 for additional Defendant list |
|---|---|

**The Person or Business Suing You Claims You Owe the Following:**

| | |
|---|---:|
| Demand Amount | $4220.90 |
| Filing Fee | $185.00 |
| Service Fee | $21.00 |
| Attorney's Fees | $0.00 |
| **TOTAL** | **$4426.90** |

### FOR JUDICIARY USE ONLY

In the attached complaint, the person or business suing you briefly tells the court his or her version of the facts of the case and how much money he or she claims you owe.  **If you do not answer the complaint, you may lose the case automatically and the court may give the plaintiff what the plaintiff is asking for, plus interest and court costs.  You have 35 days from the date of service to file your answer or a signed agreement.**  If a judgment is entered against you, a Special Civil Part Officer may seize your money, wages or personal property to pay all or part of the judgment.  The judgment is valid for 20 years.

**IF YOU DISAGREE WITH THE PLAINTIFF'S CLAIMS, A WRITTEN ANSWER OR SIGNED AGREEMENT MUST BE RECEIVED BY THE COURT ABOVE, ON OR BEFORE 03/05/2018, OR THE COURT MAY RULE AGAINST YOU.  IF YOU DISAGREE WITH THE PLAINTIFF, YOU MUST DO ONE OR BOTH OF THE FOLLOWING:**

1. ***Answer the complaint***.  An answer form that will explain how to respond to the complaint is available at any of the New Jersey Special Civil Part Offices or on the Judiciary's Internet site njcourts.gov under the section for Forms.  If you decide to file an answer to the complaint made against you:
   - Fill out the Answer form AND pay the applicable filing fee by check or money order payable to: ***Treasurer, State of New Jersey***.  Include **MRS-DC-000563-18** (your Docket Number) on the check.
   - Mail or hand deliver the completed Answer form and the check or money order to the court's address listed above.
   - Hand deliver or send by regular mail a copy of the completed Answer form to the plaintiff's attorney.  If the plaintiff does not have an attorney, send your completed answer form to the plaintiff by regular and certified mail.  This MUST be done at the same time you file your Answer with the court on or before **03/05/2018**.

2. ***Resolve the dispute.***  Contact the plaintiff's attorney, or contact the plaintiff if the plaintiff does not have an attorney, to resolve this dispute.  The plaintiff may agree to accept payment arrangements.  If you reach an agreement, mail or hand deliver the **SIGNED** agreement to the court's address listed above on or before **03/05/2018**.

**Please Note - You may wish to get an attorney to represent you.**  If you cannot afford to pay for an attorney, free legal advice may be available by contacting Legal Services at 973-285-6911. If you can afford to pay an attorney but do not know one, you may call the Lawyer Referral Services of your local County Bar Association at 973-267-5882. Notify the court now if you need an interpreter or an accommodation for a disability for any future court appearance.

*/s/ Michelle M. Smith*

Clerk of the Superior Court



| Dirección y teléfono del tribunal | El Tribunal Superior de Nueva Jersey |
|---|---|
| Parte Civil Especial de MORRIS | **División de Derecho, Parte Civil Especial** |
| WASHINGTON STREETS | Condado de **MORRIS** |
| MORRISTOWN, NJ 07963-0910 | Número del expediente **MRS-DC-000563-18** |
| 973-656-4125 | **Demanda de Acción Civil** |
| | **NOTIFICACIÓN DE DEMANDA** |
| | **CONTRACT DISPUTE** |

## ¡LE ESTÁN DEMANDANDO!

| **Persona o entidad comercial que le está demandando (el demandante)** | **Persona o comercial ser demandada (el demandado)** |
|---|---|
| Gregory J Skiff | BMW Financial Services NA, LLC |
| See Page 3 for additional Plaintiff list | See Page 3 for additional Defendant list |
| **Información sobre el abogado del demandante** | **La persona o comercial que le está demandando afirma que usted le debe lo siguiente:** |

|  |  |
|---|---|
| Cantidad a la vista | $4220.90 |
| Tasa judicial | $185.00 |
| Cargo del emplazamiento | $21.00 |
| Honorarios del abogado | $0.00 |
| **TOTAL** | **$4426.90** |

**PARA USO EXCLUSIVO DEL PODER JUDICIAL**

En la demanda adjunta la persona o entidad comercial que le está demandando le informa brevemente al juez su versión de los hechos de la causa y la suma de dinero que afirma que usted le debe. **Si usted no responde a la demanda puede perder la causa automáticamente y el juez puede dar al demandante lo que está pidiendo más intereses y los costos legales. Usted tiene 35 días a partir de la fecha del emplazamiento para presentar su respuesta o un acuerdo firmado.** Si se dicta un fallo en su contra, un Oficial de la Parte Civil Especial puede embargar su dinero, sueldo o sus bienes muebles (personales) para pagar todo el fallo o una parte del mismo.  El fallo es válido por 20 años.

**SI USTED NO ESTÁ DE ACUERDO** CON LAS ALEGACIONES DEL DEMANDANTE, EL TRIBUNAL TIENE QUE RECIBIR **UNA RESPUESTA POR ESCRITO O UN ACUERDO FIRMADO PARA EL 03/05/2018 O ANTES DE ESA FECHA, O EL JUEZ PUEDE EMITIR UN FALLO EN SU CONTRA. SI USTED <u>NO ESTÁ DE ACUERDO</u> CON EL DEMANDANTE, DEBE HACER <u>UNA</u> DE LAS SIGUIENTES COSAS <u>O LAS DOS:</u>**

1. *Responder a la demanda*.  Un formulario de respuesta que le explicará cómo responder a la demanda está disponible en cualquiera de las Oficinas de la Parte Civil Especial de Nueva Jersey o en el sitio Internet del Poder Judicial njcourts.gov bajo la sección de formularios (Forms).  Si usted decide presentar una respuesta a la demanda que se hizo en su contra:
   - Llene el formulario de Respuesta Y pague la tasa judicial de presentación que corresponda mediante  un cheque o giro bancario o postal acreditable al: "***Treasurer, State of New Jersey***" (Tesorero del Estado de Nueva Jersey).  Incluya **MRS-DC-000563-18** (el número de su expediente) en el cheque.
   - Envíe por correo el formulario de Repuesta llenado y el cheque o giro bancario o postal a la dirección del tribunal que figura más arriba, o entrégueselos personalmente en dicha dirección.
   - Entregue personalmente o envíe por correo común una copia del formulario de Repuesta llenado al abogado del demandante.  Si el demandante no tiene abogado, envíe su formulario de respuesta llenado al demandante por correo común y por correo certificado. Esto SE TIENE que hacer al mismo tiempo que presente su Respuesta al tribunal a más tardar el <u>**03/05/2018.**</u>

2. *Resolver la disputa*.  Comuníquese con el abogado del demandante, o con el demandante si éste no tiene abogado, para resolver esta disputa.  El demandante puede estar de acuerdo con aceptar arreglos de pago.  **Si llegara a un acuerdo, envíe por correo o entregar personalmente el acuerdo FIRMADO** a la dirección del tribunal que figura más arriba, o entréguelo personalmente en dicha dirección a más tardar el <u>**03/05/2018**</u>.

**Nota - Puede que usted quiera conseguir que un abogado para que lo represente.**  Si usted no puede pagar a un abogado, podría obtener consejos legales gratuitos si se comunica con Legal Services (Servicios Legales) llamando al 973-285-6911.  Si usted puede pagar a un abogado, pero no conoce a ninguno, puede llamar al Lawyer Referral Services (Servicios de Recomendación de Abogados) del Colegio de Abogados (Bar Association) de su condado local al 973-267-5882.  Notifique al tribunal ahora si usted necesita un intérprete o un arreglo por una discapacidad para cualquier comparecencia futura en el tribunal.

**/s/ Michelle M. Smith**

Subsecretario(a) del Tribunal Superior



| Court's Address and Phone Number:<br>MORRIS Special Civil Part<br>WASHINGTON STREETS<br>MORRISTOWN, NJ 07963-0910<br><br>973-656-4125 | **Superior Court of New Jersey**<br>**Law Division, Special Civil Part**<br>**MORRIS** County<br>Docket No: **MRS-DC-000563-18**<br>**Civil Action**<br><br>**SUMMONS**<br><br>**CONTRACT DISPUTE** |
|---|---|
| **Additional Plaintiffs/demandantes adicionales** | **Additional Defendants/demandados adicionales**<br>Central Credit Services LLC<br>Geico General Insurance Company |